Clayton HOOD and Gregory Turman, Plaintiffs–Appellees,

v.

KNAPPTON CORP. INC., an Oregon Corporation, Defendant–Appellant.

No. 91–35487.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 4, 1993.

Decided Feb. 22, 1993.

---

Joseph P. Wright and Guy ·C. Stephenson, Schwabe, Williamson & Wyatt, Portland, OR, for defendant-appellant.

John P. Crowell, Portland, OR, for plaintiffs-appellees.

Before: D.W. NELSON, TROTT, and T.G. NELSON, Circuit Judges.

D.W. NELSON, Circuit Judge:

Knappton Corporation, Inc. ("Knappton") appeals the district court's judgment holding Knappton liable to Clayton Hood and Gregory Turman for damages sustained to Hood's and Turman's boats when they collided with Knappton's log raft. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 31, 1988, a Knappton tug boat towed a log raft, consisting of bundled logs, into the Multnomah Channel in Oregon and moored it to pilings adjacent to the shore. Although the log raft was initially secured at both ends along the shore, the line securing one end became untied and that end of the raft drifted into the channel.

Hood and Turman were participants in a bass fishing tournament on the channel on the morning of October 29, 1988. As they proceeded down the channel in their motorized fishing boats, they each collided with Knappton's drifting log raft.

On July 27, 1989, Hood and Turman filed this negligence action against Knappton for damage sustained to their boats and for personal injury to Turman. At the bench trial, the district court followed the admiralty principle set forth in *The Louisiana,* 70 U.S. (3 Wall.) 164, 18 L.Ed. 85 (1865), shifting the burden of proof from Hood and Turman to Knappton and requiring Knappton to demonstrate that it was not negligent in permitting its log raft to become unmoored.

The district court concluded that Knappton was negligent in allowing its log raft to drift into the waterway, but that Hood and Turman were each 25 percent at fault for failing to maintain a reasonable lookout. Accordingly, the district court awarded Hood and Turman 75 percent of their damages. This timely appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

■ We have jurisdiction pursuant to 28 U.S.C. § 1291. Questions of law are reviewed de novo. *Anderson v. United States,* 966 F.2d 487, 489 (9th Cir.1992). We review for clear error the district court's apportionment of fault under comparative negligence principles. *Trinidad Corp. v. S.S. Keiyoh Maru,* 845 F.2d 818, 822 (9th Cir.1988). "Under a clearly erroneous standard, we must affirm an apportionment of liability unless, after review of all the evidence, we are left with a 'definite and firm conviction that a mistake has been committed.'" *Id.* (citation omitted).

## III. DISCUSSION

Knappton argues that the district court erred when it shifted the burden of proof

from Hood and Turman to Knappton, in violation of Fed.R.Evid. 301. Knappton also contends that the presumption of its negligence was inappropriate because the log raft had been secure for two months. Finally, Knappton challenges the district court's finding of comparative negligence, arguing that Hood's and Turman's reckless behavior was the sole cause of the collisions.

## A. BURDEN OF PROOF

In *The Louisiana*, 70 U.S. (3 Wall.) 164, 18 L.Ed. 85 (1865), the Supreme Court set forth the admiralty principle that an unmoored vessel which drifts into a collision is presumed to be at fault. The drifting vessel is presumptively liable for damages "unless [it] can show affirmatively that the drifting was the result of inevitable accident, or a *vis major*, which human skill and precaution, and a proper display of nautical skill could not have prevented." *Id.* at 173. In short, the *Louisiana* rule shifts to the drifting vessel the burden of production and the burden of proof, or persuasion. *See Weyerhaeuser Co. v. Atropos Island*, 777 F.2d 1344, 1348 (9th Cir.1985).

Knappton argues that because the Federal Rules of Evidence govern admiralty cases, pursuant to Fed.R.Evid. 1101(b), the *Louisiana* rule is inapplicable because it conflicts with the general burdens set out in Fed.R.Evid. 301.[1] Knappton contends that Rule 301 shifts from the claimant to the defendant the burden of going forward with evidence; the risk of nonpersuasion remains at all times with the plaintiff. The *Louisiana* rule directly contradicts Rule 301 because it shifts both the burdens of production and persuasion.

We directly addressed the allocation of burdens in admiralty and maritime cases in *Weyerhaeuser*, a case in which two ships drifted from their previously secured positions and collided with the plaintiff's docks. We recognized the admiralty rule that a vessel that breaks free from its moorings and causes damage is presumptively at fault, and stated that the drifting vessel "bears the burden of proof and not merely of production." *Id.* at 1348. Although we did not explicitly discuss Rule 301, we acknowledged the continuing validity of the admiralty rules allocating burdens. *Accord Maxwell v. Hapag–Lloyd Aktiengesellschaft*, 862 F.2d 767, 769 (9th Cir.1988) (moving vessel that hits stationary object is presumptively at fault).

■■■ We now make explicit the holding that has been implicit in our past decisions: the allocation of burdens dictated by the *Louisiana* rule continues to be the law of this circuit and is not affected by Rule 301. In so holding, we recognize that admiralty law stands apart from other areas of federal law. Its longstanding principles reflect unique norms and further distinctive goals.[2] In the case of the *Louisiana* rule, the allocation of the burden of proof to the drifting vessel reflects the necessity that vessels be securely moored to avoid accidents. Clearly, the *Louisiana* rule is a procedural principle which is inextricably linked to the substantive maritime goal which it promotes. We decline to divorce the two by imposing the general allocation of burdens dictated by the Federal Rules of Evidence. *See James v. River Parishes Co., Inc.*, 686 F.2d 1129, 1133 (5th Cir.1982) (adoption of the Federal Rules of Evidence did not alter burdens established in admiralty law). Thus, the district court did not

---

**1.** Rule 301 provides:

   In all civil actions and proceedings ..., a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

**2.** The *Louisiana* rule is one of several well established admiralty principles predating the adop-

tion of the Federal Rules of Evidence. *See, e.g., Self v. Great Lakes Dredge & Dock Co.*, 832 F.2d 1540, 1554 (11th Cir.1987), *cert. denied*, 486 U.S. 1033, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988) (*Pennsylvania* rule—when vessel involved in collision is in violation of statutory rule designed to prevent collisions, burden shifts to that ship to disprove liability); *City of Boston v. S.S. Texaco Texas*, 773 F.2d 1396, 1398 (1st Cir.1985) (*Oregon* rule—when a vessel under its own power collides with a stationary object, moving vessel carries burden of proof).

err by requiring Knappton to prove by a preponderance of the evidence that the log raft drifted for some reason other than Knappton's negligence.[3]

### B. APPLICATION OF THE *LOUISIANA* RULE

■ Knappton argues that, should we hold the *Lousiana* rule generally applicable, the factual circumstances of this case do not implicate the presumption of negligence dictated by the *Louisiana* rule. Knappton construes the rule as raising a presumption of improper mooring at the time the vessel was secured, rather than at the time of the accident. The fact that Knappton's log raft remained secure for two months before drifting suggests that the ties and knots were sound at the time they were made. Therefore, according to Knappton's reading of the *Louisiana* rule, the log raft was not improperly moored as a matter of law. Knappton fails to cite any authority to support its limited reading of the *Louisiana* rule.[4]

In *The Louisiana*, the vessel broke free after the tide and the wind changed. The Supreme Court found that, under the circumstances, the vessel was sufficiently secured at the time it was first moored. Nevertheless, the presumption of negligence attached because, once the tide and wind conditions changed, the crew should have taken proper precautions to prevent the vessel from breaking away. The Court concluded that "the fact that under these circumstances [the vessel] *did* drift, [was] conclusive evidence that she was not suffi-

ciently and properly secured." 70 U.S. (3 Wall.) at 174 (emphasis in original). In reaching its conclusion, the Court focused on the conditions at the time the vessel broke free, not those existing at the time it was originally moored.

Thus, Knappton's narrow interpretation of the *Louisiana* rule is wrong; *The Louisiana* and its progeny create a presumption of fault at the time of the accident. *See, e.g., Weyerhaeuser,* 777 F.2d at 1349 (failure to take proper precautions in face of approaching storm); *James,* 686 F.2d at 1133 (mooring lines not properly maintained at time of accident). Accordingly, we hold that the district court did not err by placing the presumption of fault on Knappton.[5]

### C. COMPARATIVE NEGLIGENCE

■ Knappton also challenges the district court's comparative negligence finding, arguing that under the circumstances, Hood and Turman were traveling too fast and failed to post adequate lookouts. Hood and Turman were traveling down the channel at approximately 40–55 miles per hour. Knappton argues that because the boaters could not stop their vessels within their range of vision (40–45 yards), they were traveling too fast. However, an Oregon State Police Supervisor familiar with the channel testified that he travelled the same stretch at 55 miles per hour safely. In the early morning hours, no other traffic was on the channel, and presumably, Hood and Turman were not aware that the channel was blocked. Given these facts, the

---

**3.** Both parties bring up the possibility of liability under the theory of *res ipsa loquitur.* Because the admiralty rules govern the allocation of burdens, this theory is inapplicable.

**4.** Knappton cites two district court cases in support of its contention. These cases involved vessels breaking loose after being moored for five days and under extreme weather conditions. *Marine Welding Servs. Inc. v. B–R River Servs., Inc.,* 550 F.Supp. 425 (S.D.Ohio 1982) (barge breaks away in severe ice conditions); *Tug Sea Hawk v. Sococo,* 707 F.Supp. 1306 (S.D.Fla.1988) (vessel breaks away in hurricane conditions), *aff'd* 894 F.2d 411 (11th Cir.1990). In both cases, the party seeking exoneration was a third party hired to secure the vessel, rather

than the owner of the vessel. These cases focused primarily on whether the extreme weather conditions were reasonably foreseeable or Acts of God. The fact that the vessels broke away five days after mooring was irrelevant.

**5.** To the extent that Knappton argues that it was not negligent in allowing its raft to drift, this court reviews the district court's factual findings for clear error. *Weyerhaeuser,* 777 F.2d at 1349. Here, there was no evidence that an intruder tampered with the tie holding the log raft. Although Knappton introduced evidence that it periodically checked the rafts, the district court concluded that Knappton had not overcome the presumption of negligence. This finding is not clearly erroneous.

district court concluded that Hood and Turman were not traveling at an unreasonable rate of speed. Nevertheless, because they failed to keep a reasonable lookout, the district court found Hood and Turman 25 percent at fault. The district court's conclusion was not clearly erroneous.

## IV. CONCLUSION

For the above reasons, the judgment of the district court is

Affirmed.