REVISED January 13, 2009

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 9, 2009

Charles R. Fulbruge III
Clerk

No. 08-20079

ONDIMAR TRANSPORTES MARITIMOS LTDA; IBAIZABAL
MANAGEMENT SERVICES SL,

                                        Plaintiffs - Appellants

v.

BEATTY STREET PROPERTIES, INC., IN PERSONAM; M/V BAYOU CITY,
HER ENGINES, MACHINERY, TACKLE AND APPURTENANCES, ETC., IN REM,

                                        Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, STEWART, and DENNIS, Circuit Judges.

DAVIS, Circuit Judge:

Plaintiffs-Appellants Ondimar Transportes Maritimos LTDA and Ibaizabal Management Services SL (collectively, "Ondimar") appeal from the district court's partial summary judgment dismissing Ondimar's assigned tort claim against Defendants-Appellees Beatty Street Properties, Inc. and M/V Bayou City (collectively, "Beatty"). For the reasons set forth below, we affirm.

## I. FACTS

On April 12, 2005, the M/T Monte Toledo, a vessel owned and operated by Ondimar, collided with a dock at the Port of Texas City ("the Port"). Ondimar denied liability and asserted (and continues to assert) that the allision occurred because the M/T Monte Toledo's VHF communications with her attending tugs had been disrupted by the use of reserved communications channels by the crew of the M/V Bayou City, a vessel owned and operated by Beatty. Notwithstanding Ondimar's assertion that Beatty was the party at fault, the Port demanded that Ondimar pay the full amount of the damage, $133,608.46, pursuant to U.S. Customs Port Code 5306, Circular No. 4-H ("the Tariff").

The Tariff, which is enforceable as an implied contract pursuant to the Shipping Act of 1984, 46 U.S.C. § 40501(f)[1], gives the Port rights it would not otherwise have with respect to Port users such as Ondimar. More particularly, Tariff Item 292 provides that if such users of the Port cause damage to Port property, the Port may demand payment in full "for all costs (including without limitation attorneys' fees, replacement costs and lost revenue) arising from . . . physical damage." If the Port user fails to pay in full within 30 days for any damage it causes to the Port, other Tariff provisions require the Port to deny that vessel's owner the use of Port facilities.

Although Ondimar notified Beatty of the Port's claim against Ondimar, it did not include Beatty in the settlement negotiations. Ondimar paid the claim in full in November 2006 and obtained an assignment from the Port of any claims (except for claims under the Tariff) the Port might have against Beatty. Ondimar concedes that the assigned claim sounds in tort.

After settling the Port's claim and obtaining the assignment, Ondimar filed suit against Beatty to recover the full $133,608.46 either in contribution,

---

[1] Prior to 2006, this statute was codified at 46 U.S.C. app. § 1707(f).

indemnity, or by virtue of the assignment. Ondimar also asserted a claim against Beatty for damage to its own vessel, the M/T Monte Toledo. Beatty filed a motion, which the district court treated as a motion for summary judgment, seeking to dismiss all of Ondimar's claims.

The district court denied the motion with respect to Ondimar's own claims for vessel damage but granted the motion as to all other claims. It dismissed Ondimar's contribution and indemnity claims on the ground that general maritime law's proportionate liability framework precluded such claims where Beatty had not also been released in the settlement with the Port. The court also dismissed Ondimar's claim based on the assignment from the Port on the ground that the assignment was invalid under maritime law.

Ondimar appeals from the dismissal of the Port's assigned tort claim but does not contest the dismissal of its contribution and indemnity claims. Ondimar argues that (1) the Port's assignment was valid under maritime law, in part because the Tariff imposed a contractual obligation on Ondimar to pay; and (2) Ondimar may pursue the assigned claim through equitable subrogation.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had admiralty and maritime jurisdiction under 28 U.S.C. § 1333. We have subject matter jurisdiction over this interlocutory order pursuant to 28 U.S.C. § 1292(a)(3), which confers appellate jurisdiction for "[i]nterlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." See Jensenius v. Texaco, Inc., Marine Dept., 639 F.2d 1342, 1343 (5th Cir. 1981) (determining the appealability of an admiralty order under § 1292(a)(3) based on whether it "reach[es] the merits of the claim and . . . determines, denies, or prejudices any substantive rights of the parties").

## III. LAW AND ANALYSIS
## A. CLAIM ASSIGNMENT

Ondimar argues first that the district court erred in concluding that the assignment from the Port was invalid. This argument requires us to examine the proportionate liability framework for general maritime tort law announced in McDermott, Inc. v. AmClyde, 511 U.S. 202 (1994), under which each tortfeasor ultimately is liable only for his proportionate share of fault. Id. at 208–09. There, the plaintiff settled with three defendants for $1 million but proceeded to trial against the remaining nonsettling defendants. Id. at 204. The jury found the plaintiff's total damages to be $2.1 million and found the nonsettling defendants to be 70% at fault, and therefore liable to the plaintiff for $1,470,000. Id.

The issue before the Supreme Court was "whether the liability of the nonsettling defendants should be calculated with reference to the jury's allocation of proportionate responsibility, or by giving the nonsettling defendants a credit for the dollar amount of the settlement." Id. The court adopted the proportionate liability approach and declined to reduce the nonsettling defendants' liability by the $1 million paid by the settling defendants. The Supreme Court found "three considerations . . . paramount: consistency with the proportionate fault approach of [earlier case law], promotion of settlement, and judicial economy." Id. at 211. Under McDermott, a settling tortfeasor is essentially presumed to pay only for his proportionate liability, and the nonsettling defendants get no credit for the amount paid by a settling tortfeasor, even though the plaintiff ultimately may be overcompensated or undercompensated. Id. at 219–20.

The court in McDermott made it clear that its proportionate liability scheme barred contribution actions by nonsettling tortfeasors against a settling tortfeasor. Id. at 209. The Court's reasoning also precludes a settling tortfeasor

from seeking contribution from a nonsettling tortfeasor. The Eleventh Circuit made this latter point clear in Murphy v. Florida Keys Elec. Co-op. Ass'n, Inc., 329 F.3d 1311 (11th Cir. 2003). There, the plaintiffs sued one tortfeasor, Florida Keys, but declined to sue the other tortfeasors, the Ashmans. Id. at 1313. Florida Keys settled with the plaintiffs and pursued a contribution claim against the Ashmans. Id.

The issue before the Eleventh Circuit was whether a settling tortfeasor may pursue a contribution claim against a nonsettling potential tortfeasor. The court held that such contribution was barred: "An essential tenet of this [McDermott] approach is that when a tortfeasor settles a claim against it, but does not obtain a release for the other tortfeasors, it has settled only its proportionate share of the total damages, no more and no less." Id. at 1314. Thus, "[n]o suit for contribution will lie against a nonsettling defendant who is not released from liability, because that defendant remains liable for its proportionate share of damages regardless of the terms of the settlement the other defendant made." Id. at 1315.

The district court relied on these cases to determine that Ondimar could not obtain contribution or indemnity from Beatty; Ondimar does not dispute that determination on appeal. We also rely on these cases, however, for the main question before us—whether the Port's assignment to Ondimar is valid. We must find the assignment invalid if the assignment of property damage tort claims under these circumstances is either (a) generally prohibited by law or (b) generally permitted by law but barred by application of McDermott and Murphy principles.

It is unnecessary for us to determine whether the assignment of property damage tort claims are generally prohibited, although our research suggests that

5

most state courts which have considered the question permit such assignments.[2]

We conclude, however, that even if assignment is generally permitted, there are good reasons for imposing certain limitations in the context of McDermott's proportionate fault framework. The Texas Supreme Court's decision in Beech Aircraft Corp. v. Jinkins, 739 S.W.2d 19 (Tex. 1987), cited by the district court, is a good illustration of such a limitation.

The Beech Aircraft court found that although tort actions generally could be assigned, a plaintiff was prohibited from assigning the action to a joint tortfeasor where each tortfeasor was liable, under Texas law, only for his proportionate fault and none could seek contribution from any other:

> We see no advantage in allowing defendants responsible for the plaintiff's injuries a right to, in effect, buy the plaintiff's claims and prosecute the other jointly responsible parties. It is not apparent that such settlements will result in any significant savings of time

---

[2] We look to the common law as a "guide to interpretation of federal admiralty principles." Casino Cruises Inv. Co., L.C. v. Ravens Mfg. Co., 60 F. Supp. 2d 1285, 1287 (M.D. Fla. 1999). Although at least one common law jurisdiction bars assignment of all tort claims, regardless of nature, Bolz v. State Farm Mut. Auto. Ins. Co., 52 P.3d 898, 901 (Kan. 2002) ("It has long been recognized in Kansas that all choses in action, except torts, are assignable."), and at least one jurisdiction has conflicting authority, In re Buildnet, Inc., 2004 WL 1534296, *10 (Bankr. M.D.N.C. 2004) (discussing uncertain North Carolina precedent), most states permit the assignment of property damage tort claims. See, e.g., In re Redditt, 2006 WL 3103013, *1 (Bankr. E.D. Mo. 2006) (citing State ex. rel. Parker Nat'l Bank v. Globe Indemn. Co., 61 S.W.2d 733, 735-36 (Mo.1933)) ("The assignment of an unliquidated claim for property damage, however, is valid under Missouri law."); Midtown Chiropractic v. Illinois Farmers Ins. Co., 847 N.E. 2d 942, 944-45 (Ind. 2006) ("However, the assignment of such interests has gained gradual acceptance over time, beginning with those interests based in contract, and later for torts against personal property."); TMJ Hawaii, Inc. v. Nippon Trust Bank, 153 P.3d 444, 384 (Haw. 2007) (permitting, under Hawaii law, the assignment of the "non-personal" tort claims of professional malpractice, breach of fiduciary duty, and fraud); Larabee v. Potvin Lumber Co., Inc., 459 N.E.2d 93, 96 (Mass. 1983) ("Claims for injury to property interests are clearly assignable."); Canal Indem. Co. v. Greene, 593 S.E.2d 41, 46 (Ga. App. 2003); Ford v. Summertree Lane Ltd. Liability Co., 56 P.3d 1206, 1209 (Colo. App. 2002) ("[C]hoses in action in tort for damage to property, such as the fraudulent transfer of land, are transferable and may be assigned."); Dubina v. Mesirow Realty Development, Inc., 719 N.E.2d 1084, 1088 (Ill. App. 1999) ("[C]auses of action for damage to property are generally assignable in Illinois."); National Union Fire Ins. Co. of Pittsburgh, Pa. v. KPMG Peat Marwick, 742 So.2d 328, 330 (Fla. App. 1999) ("A cause of action, which is not based on a personal tort such as malpractice, may be assigned.").

or resources. We can, however, envision that the settling defendant's unusual posture as surrogate plaintiff, co-defendant and cross-plaintiff will confuse a jury and possibly prejudice the remaining parties.

Id.[3]

We are persuaded that the Beech Aircraft analysis prohibiting an assignment by a plaintiff to a joint tortfeasor is completely consistent with McDermott's reasoning. Permitting such an assignment would permit an easy end run around McDermott's prohibition of contribution claims between a settling defendant and a co-tortfeasor and seriously undermine McDermott's proportionate fault approach to dealing with partial settlement.

Moreover, permitting assignment under these circumstances would not further the primary goals of McDermott: "consistency with the proportionate fault approach . . . , promotion of settlement, and judicial economy." 511 U.S. at 211. As for the first consideration, we stated above how such assignments would undermine McDermott's proportionate fault approach. As to the second and third considerations, permitting assignment to a co-tortfeasor would tend to encourage partial settlement and would not encourage total settlement of claims—an important goal of McDermott. As Beech Aircraft suggests, permitting such assignments will lead to costlier, longer, and more confusing suits, all of which would undermine McDermott's goal of promoting judicial economy.

In sum, permitting a co-tortfeasor to settle with the injured party, obtain an assignment from that injured party, and proceed against the nonsettling potential tortfeasor is inconsistent with the goals of McDermott's proportionate

---

[3] We note that the Beech Aircraft court would forbid assignment even where the settling tortfeasor "obtain[ed] a complete release for all other parties allegedly responsible." 739 S.W.2d at 22. That is probably stricter than McDermott, given that Murphy would permit contribution against a co-tortfeasor where that co-tortfeasor had also been released. Nevertheless, we use the case merely as an example, and its analysis is otherwise useful.

liability framework. We adopt the rule for the general maritime law that the assignment of tort claims from the injured party to one tortfeasor permitting the settling defendant to proceed against a co-tortfeasor is invalid. Accordingly, we must invalidate the assignment of the Port's property damage claim to Ondimar, to the extent that it permits Ondimar to proceed against a co-tortfeasor.

Ondimar argues that the prohibition against assignment rule should not apply to these facts because Ondimar's settlement and assignment agreement with the Port was based on the Tariff's alleged no-fault liability scheme so that Ondimar and Beatty are not joint tortfeasors. Although the Port may have made its demand in part under the Tariff, the basis for that claim was a maritime allision, a classic maritime tort. Under longstanding maritime law, "[w]hen a moving vessel collides with a stationary object, the moving vessel [here, Ondimar's M/T Monte Toledo] is presumed to be at fault." Brunet v. United Gas Pipeline Co., 15 F.3d 500, 503 (5th Cir. 1994) (citing, inter alia, The Oregon, 158 U.S. 186, 192–93 (1895)). Ondimar concedes that the assigned claim sounds in tort, not contract. Even without the concession, this is clear under the express language of the written assignment in which the Port excluded from its assignment "all claims against third-parties relating to the Incident arising under or pursuant to a contract or [the Tariff] or any other tariff or circular of the Port of Texas City."

The fact that the Port may have had an additional contract claim against Ondimar, which Ondimar settled along with the tort claim, is irrelevant. The fact remains that Ondimar settled a tort claim with the Port and argues that Beatty's fault caused or contributed to the allision. Ondimar concedes that it cannot seek contribution from Beatty on this tort claim. The fact that the Port had a potential contract claim against Ondimar does not affect this result; the Port assigned only a tort claim, which we hold is invalid under maritime law on

these facts.  The district court therefore correctly dismissed Ondimar's claim predicated on the assignment from the Port.


## B.  EQUITABLE SUBROGATION

As an alternative to its claim based on the assignment from the Port, Ondimar asserts for the first time on appeal that it was equitably subrogated to the Port's claim against Beatty.  "Our inquiry . . . is limited to the summary judgment record and the plaintiffs may not advance on appeal new theories or raise new issues not properly before the district court to obtain reversal of the summary judgment."  Little v. Liquid Air Corp., 37 F.3d 1069, 1071 (5th Cir. 1994) (en banc) (citing Topalian v. Ehrman, 954 F.2d 1125, 1132 n. 10 (5th Cir. 1992)).  "[A] doctrine cannot be asserted 'by implication,'" much less one that was "'not even identified by name, much less advocated'" at the district court.  Vogel v. Veneman, 276 F.3d 729, 733 (5th Cir. 2002) (quoting In re Fairchild Aircraft Corp., 6 F.3d 1119, 1128 (5th Cir. 1993)).

Although we may review "claims raised for the first time on appeal . . . involving purely legal questions where our failure to consider them would result in a 'miscarriage of justice,'" id., equitable subrogation, as its name suggests, is not a purely a legal question.  It is difficult to see how the inherently fact-intensive application of an equitable doctrine could ever be considered a purely legal question, much less when the factual record necessary for such a claim is so poorly developed.  Ondimar has waived any equitable subrogation claim.


## CONCLUSION

For the above reasons, the district court's grant of partial summary judgment is affirmed.

AFFIRMED.