# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 4, 2009

Charles R. Fulbruge III
Clerk

No. 08-40322

Lexington Insurance Company,
As Assignee of Ann M. Wells

Plaintiff-Appellant

v.

S.H.R.M. Catering Services, Inc.
a/k/a Eurest Support Services

Defendant-Appellee

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before GARWOOD, GARZA, and OWEN, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant, Lexington Insurance Company (Lexington), as assignee of Ann Wells (Wells), sued Defendant-appellee, S.H.R.M. Catering Services, Inc., a/k/a Eurest Support Services (Eurest), based upon injuries Wells sustained while employed by Eurest. Eurest filed a Rule 12(b)(6) motion to dismiss the suit, arguing that the assignment was invalid. The district court granted the motion and dismissed Lexington's claim. Lexington now appeals the district court's grant of Eurest's motion to dismiss. For the following reasons, we affirm.

## FACTS AND PROCEEDINGS BELOW

Eurest provides catering and janitorial services for offshore rigs. Wells, a Eurest employee, was assigned to work as a cook on the M/V OCEAN LEXINGTON, a semisubmersible drilling rig owned and operated by Diamond Offshore Drilling Services, Inc. (Diamond). Wells was injured on two separate occasions while working aboard the OCEAN LEXINGTON, once after she slipped and fell in wet wax in a hallway and a second time after boxes fell on her in the vessel's storage area. On June 30, 2005, Wells sued Diamond in federal district court to recover for her injuries. As Wells's employer, Eurest had a Master Service Agreement with Diamond that required Eurest's Commercial General Liability carrier, Lexington, to defend and indemnify Diamond against Wells's claims.

From the beginning, both parties had access to information suggesting Eurest shared liability for Wells's injuries.[1] However, Wells did not name Eurest in her suit, and Diamond did not move to join Eurest as a third-party defendant until April 18, 2006, more than nine months after Eurest brought suit and less than two months prior to the parties' set trial date. Wells opposed the motion as untimely, and the district court dismissed the motion as being without merit. Diamond did not attempt to appeal or otherwise seek review of the ruling, but instead reached a settlement agreement with Wells. As part of the settlement, Wells agreed to assign to Lexington all of her claims against Eurest. Diamond notified the district court that a settlement had been reached, and the district court dismissed Wells's claims against Diamond with prejudice. The release

---

[1]Specifically, Wells stated early on that a Eurest co-worker was partly responsible for her slip and fall by applying excess wax to the floor and failing to place a warning sign. She also stated that Eurest employees had improperly stacked the boxes which fell and injured her. This information was also available in the accident reports.

agreement did not name Eurest among the released parties. Later, Lexington, as Wells's assignee, brought the present suit against Eurest. Eurest filed a motion to dismiss Lexington's claims, and the district court ruled that the assignment of unliquidated personal injury claims was invalid under federal maritime law and dismissed Lexington's suit pursuant to Rule 12(b)(6). Lexington timely filed this appeal.

## DISCUSSION

Lexington argues that the district court erred in concluding that the assignment of Wells's unliquidated personal injury claim was invalid under federal maritime law and, thus, the court improperly dismissed Lexington's claims under Rule 12(b)(6). Dismissals under Rule 12(b)(6) are reviewed *de novo*. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (quotation marks, citations, and footnote omitted). Because Lexington's complaint is premised on the permissibility of an assignment of unliquidated personal injury claims, this court must affirm the district court's dismissal if such assignments are invalid.

This court has not yet addressed the issue of whether such assignments of unliquidated tort personal injury claims are generally permissible under federal maritime law. In the absence of any direct authority, admiralty courts may look to the common law for guidance. *Casino Cruises Inv. Co., L.C. v. Ravens Mfg. Co.*, 60 F. Supp. 2d 1285, 1287 (M.D. Fla. 1999). Under the common law and the law of most states, "personal injury claims are not assignable absent

3

a statute to the contrary." *Id.* This common law bar was intended to prevent the "evils of champerty and maintenance." *Id.* (quoting *Hospital Serv. Corp. v. Pennsylvania Ins. Co.*, 101 R.I. 708, 712 (1967)).

Lexington argues, however, that concerns regarding champerty and maintenance are outdated and without merit—as evidenced by state law exceptions to the common law prohibition and this court's approval of Mary Carter Agreements. While Lexington's argument may have some merit, this court will generally follow the common law bar unless good reason instructs us otherwise. And, in this instance, federal maritime law persuades this court to adhere to the common law prohibition of such assignments.

The proportionate liability framework for general maritime tort law, as established in *McDermott Inc. v. AmClyde*, 114 S.Ct. 1461 (1994), is instructive. Under this framework, a tortfeasor is ultimately liable only for his proportionate share of fault. *Id.* at 1465. In the event of settlement, a settling tortfeasor is presumed to pay only for his proportionate liability, non-settling tortfeasors receive no credit for the amount paid by a settling tortfeasor, and contribution actions by non-settling tortfeasors against a settling tortfeasor are barred. *Id.* at 1466, 1470–71.

In *Ondimar Transportes Maritimos v. Betty Street*, 555 F.3d 184 (5th Cir. 2009), we recently addressed the effect of *McDermott* on a settling tortfeasor's suing a non-settling tortfeasor for property damage on the basis of an assignment of the property damage claim from the injured party in the settlement. We noted that the assignment would be invalid "if the assignment of property damage tort claims is either (a) generally prohibited by law or (b) generally permitted by law but barred by application of *McDermott* and *Murphy*[*v. Florida Keys*, 329 F.3d 311 (11th Cir. 2003)] principles." *Id.* at 187.

4

We declined to decide "whether the assignment of property damage tort claims are generally prohibited," although we observed that it appeared "most state courts . . . permit such assignments." *Id.* We stated in this connection that "we look to the common law as a 'guide to interpretation of federal admiralty principles'," citing *Casino Cruises Inv. Co., L.C.. Id.* at 187 n.2. We went on to hold, however, that even if the assignment of property damage tort claims were generally permitted, "there are good reasons for imposing certain limitations in the context of *McDermott's* proportionate fault framework." *Id.* at 188. We held that "permitting assignment under these circumstances would not further the primary goals of *McDermott*: 'consistency with the proportionate fault approach . . . promotion of settlement, and judicial economy,'" quoting *McDermott*, and "such assignments will lead to costlier, longer, and more confusing suits, all of which would undermine *McDermott's* goal of promoting judicial economy." *Id.* at 189. We therefore held: "We adopt the rule for the general maritime law that the assignment of tort claims from the injured party to one tortfeasor permitting the settling defendant to proceed against a co-tortfeasor is invalid." *Id.*[2]

*Ondimar* controls. Under these circumstances the assignment from Wells to Lexington is invalid to authorize the latter's suit against Eurest.

We recognize, as does *Ondimar*, see *id.* at 188 n.3, that where the injured party has released not only the settling tortfeasor but also the non-settling tortfeasor, that an action by the settling tortfeasor against the non-settling

---

[2]We note that in *Ondimar* the injured party and the co-tortfeasor was apparently at all relevant times subject to service of process by the settling tortfeasor. It is true that the settling tortfeasor there was under pressure to settle within 30 days of demand or be precluded by the relevant tariff under 46 U.S.C. § 40501(f) from use of the port facilities of the injured party. *Id.* at 185-86. However, nothing in *Ondimar* suggests that it could not have, for example, brought a declaratory action against the injured party and co-tortfeasor, paying the funds demanded into the registry of the court or under protest or the like.

tortfeasor for contribution is less inconsistent with *McDermott's* goals than the situation presented in the present case, and in *Ondimar*, where the injured party never released the non-settling tortfeasor. On the other hand, the *McDermott* advantages of judicial economy and clearer presentation argue in favor of having proportionate fault and the extent of damages determined in one proceeding with all relevant parties present, at least where that is reasonably possible.

Lexington also argues that federal maritime law authorizing the use of Mary Carter Agreements supports the enforcement of the Wells-Lexington assignment. Lexington argues that, while its assignment is not itself a Mary Carter agreement, there is no material distinction between the assignment at issue and those contained in Mary Carter agreements, which have frequently been approved by the court. This argument, however, is unpersuasive.

While Mary Carter Agreements bear some resemblance to an assignment of unliquidated personal injury claims, the two are quite distinct. This court has defined Mary Carter Agreements generally as "a secret contract between the plaintiff and one of several defendants whereby the contracting defendant will settle with the plaintiff before trial, but must remain in the suit, and will be reimbursed to some specific degree from the plaintiff's recovery from the other defendants." *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 309 n. 49 (5th Cir. 1993); *see, e.g., Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1156 (5th Cir. 1985)*; Wilkins v. P.M.B. Sys. Eng'g, Inc.*, 741 F.2d 795, 796–97 (5th Cir. 1984). Lexington finds fault with this court's characterization of such Agreements as reimbursements, and correctly points out that this court has frequently referred to such Agreements as "assignments." *See, e.g., Bass*, 749 F.2d at 1158; *Wilkins*, 741 F.2d at 798. But Lexington fails to recognize that Mary Carter Agreements, rather than involving the assignment of an entire claim, embody only the

6

assignment of a partial interest in a plaintiff's recovery. Fundamentally, they are best characterized as a reimbursement, requiring a settling defendant to pay the plaintiff a certain sum (often to help finance the suit), both parties remaining in the action, and if the plaintiff is successful, the settling defendant is entitled to a portion of any recovery (or any over a stated amount) that the plaintiff receives from the non-settling defendant.

In the case at hand, the Wells-Lexington assignment, unlike a Mary Carter Agreement, involves the assignment of an entire claim, not simply a partial interest in Wells's ultimate recovery from Eurest. It requires a second lawsuit, in which Lexington must act as a surrogate plaintiff and litigate the claims of an individual who is entirely absent from the suit. This absence of the injured party is a fundamental distinction between this assignment and those involved in Mary Carter Agreements, where the plaintiff remains to prosecute his own claims. *See Bass*, 749 F. 2d at 1156; *Wilkins*, 741 F.2d at 798. Allowing this form of separate action for contribution or indemnity, even when supported by an assignment, not only undermines the proportionate liability rule as established in *McDermott*, but it also ignores the value of having all parties before the court simultaneously in a single case.

Lexington claims, however, that there was no opportunity to handle Wells's claims in a single case with all responsible parties simultaneously before the court. This argument is incorrect. Under the present facts, a remedy was available to Lexington in the form of a Rule 14(c) joinder motion.[3] Wells's complaint was filed against Diamond on June 30, 2005. Early on, Lexington was aware that Eurest might share responsibility for Wells's injuries and had the

---

[3]This court does not speak to circumstances which would leave a party without a remedy to litigate the matter as a single case, e.g. circumstances in which a third party was not subject to process during the initial suit.

opportunity to file a timely Rule 14(c) motion to join Eurest as a co-defendant. Unfortunately, Lexington did not file its Rule 14(c) motion until April, 18, 2006, less than two months prior to the parties' set trial date. Wells opposed the motion, objecting to its untimeliness, among other things, and the district court dismissed the motion as being without merit. Had Lexington timely filed a Rule 14(c) motion, Eurest could have been joined as a co-defendant, thereby placing all joint tortfeasors before the court simultaneously.[4]

## CONCLUSION

For the foregoing reasons, we hold that the Wells-Lexington assignment is invalid and, thus, the district court's February 28, 2008 order dismissing the suit is

AFFIRMED.

---

[4]Lexington also argues that this court should consider making an exception to the common law prohibition on assignments of personal injury claims. In particular, Lexington points to *DeSenne v. Jamestown Boat Yard, Inc.*, 781 F. Supp. 866 (D.R.I. 1991), where the Rhode Island district court upheld the assignment of a maritime personal injury claim. We find this case unpersuasive because the assignment was upheld under extraordinary circumstances. In *DeSenne*, the assignor was attempting to renege on the assignment she made after a settlement agreement had already been reached between the assignee and the remaining tortfeasor. Undoubtedly, applying the common law bar in that instance would have resulted in extreme injustice by allowing a joint tortfeasor to remain liable to a tort victim after believing itself to have been released from all liability through a settlement agreement made with another party.