# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 23, 2010

No. 09-30592

Lyle W. Cayce
Clerk

COMBO MARITIME, INC.

Plaintiff

v.

U.S. UNITED BULK TERMINAL, LLC; U.S. UNITED BARGE LINE, LLC; UNITED MARITIME GROUP, LLC, *in personam*; MARLENE ELLIS M/V, its engines, tackle, apparel, etc., *in rem*; BRENDA KOESTLER M/V, its engines, tackle, apparel, etc., *in rem*

Defendants - Appellants

v.

CARNIVAL CORPORATION / FANTASY M/V

Third Party Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JOLLY and GARZA, Circuit Judges, and MILLER[*], District Judge.

MILLER, District Judge:

In this barge breakaway case, the appellant-third party plaintiff, U.S. United Bulk Terminal, LLC and its related entities and vessels (collectively

---

[*] District Judge of the Southern District of Texas, sitting by designation.

No. 09-30592

"United"), appeals the district court's order granting appellee-third party defendant's, Carnival Corp. and its vessel FANTASY (collectively "Carnival"), motion for summary judgment on United's claims for contribution and indemnity, and property damage.

## I. Facts

Combo Maritime, Inc. ("Combo") sued United for damages sustained when a number of barges broke free of their moorings at United's barge fleeting facility and drifted downstream, alliding with Combo's vessel, the M/V ALKMAN, which lay at anchor nearby. United filed a third-party complaint against Carnival, alleging that the barge breakaway was caused by the negligent navigation of Carnival's cruise ship FANTASY when it navigated too close to the fleeting facility under full speed. United brought claims against Carnival for (1) contribution and indemnity, and (2) damage to United's fleeting equipment and barges.[1] United additionally proffered Carnival as a defendant under Rule 14(c) of the Federal Rules of Civil Procedure.

Carnival moved for partial summary judgment on United's complaint based on the Supreme Court's decision in *THE LOUISIANA*, 3 Wall. (70 U.S.) 164, 173, 18 L.Ed. 85 (1866). The *LOUISIANA* Rule creates the rebuttable presumption that in collisions or allisions involving a drifting vessel, the drifting vessel is at fault. *See, e.g., James v. River Parishes Co.*, 686 F.2d 1129, 1131–32 (5th Cir. 1982). After reviewing the submitted evidence, the district court granted Carnival's motion for partial summary judgment. It further ordered that at trial between Combo and United, United could not present evidence that Carnival's alleged negligence contributed to the barge breakaway. Later, on a

---

[1] At oral argument, United expressly disclaimed any right to indemnity or claim for damage to its barges and fleeting equipment, claiming solely a right of contribution from Carnival.

No. 09-30592

motion for reconsideration, the district court also ordered that United's third-party complaint against Carnival be dismissed with prejudice.

After the district court entered judgment for Carnival, United settled with Combo. As part of the settlement agreement, Combo specifically released all of its claims against all parties by name, including Carnival. Combo also assigned all of its claims against Carnival to United. United then filed the instant appeal of the district court's order on summary judgment and judgment on United's third-party claims. At this court's request, the parties submitted supplemental letter briefs regarding whether the appeal is moot in light of United's settlement with Combo. For the following reasons, we reverse and remand.

## II. Mootness

As an initial matter, we must address whether the appeal before us is moot. "Whether an appeal is moot is a jurisdictional matter, since it implicates the Article III requirement that there be a live case or controversy." *Bailey v. Southerland*, 821 F.2d 277, 278 (5th Cir. 1987). "[A]ny set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006).

"In admiralty cases, federal courts allocate damages based upon the parties' respective degrees of fault." *In re Omega Protein, Inc.*, 548 F.3d 361, 370 (5th Cir. 2008) (citing *United States v. Reliable Transfer Co.*, 421 U.S. 397, 411 (1975)). "Damages are apportioned among the tortfeasors themselves through the application of the doctrin[e] of contribution." THOMAS J. SCHOENBAUM, 1 ADMIRALTY & MARITIME LAW § 5-18 (4th ed.). The right of contribution in admiralty collision claims is of ancient lineage. *Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 110, 94 S. Ct. 2174 (1974) (citing *THE NORTH STAR*, 106 U.S. 17, 1 S. Ct. 41 (1882)) (tracing the right of contribution in collision cases back to the Laws of Oleron in the 12th century); *Hardy v. Gulf Oil Corp.*, 949

3

F.2d 826, 829–30 (5th Cir. 1992). "Contribution is defined as the 'tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault.'" *United States v. Atlantic Research Corp.*, 551 U.S. 128, 139, 127 S. Ct. 2331 (2007) (quoting BLACK'S LAW DICTIONARY 353 (8th ed. 2004)). "The right of contribution exists only in favor of a tortfeasor who has discharged the entire claim for the harm by paying more than his equitable share of the common liability." RESTATEMENT (SECOND) OF TORTS § 886(A) (1979). Therefore, contribution requires that the claimant have paid more than he owes, and have discharged the entire claim.

As one commentator puts it, "[d]ifficult and interesting contribution questions arise where one or more tortfeasors settle before trial." SCHOENBAUM, *supra*, § 5-18. In *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994), the Supreme Court addressed a part of this question and held that when one defendant of many settles with a plaintiff, the liability of the remaining non-settling defendants is calculated based on their proportionate responsibility for the plaintiff's injuries without regard to the amount of the settlement. *Id.* at 221. In a companion case to *McDermott* issued the same day, the Supreme Court also held that when one defendant settles its claim with the plaintiff, "actions for contribution against settling defendants are neither necessary nor permitted." *Boca Grande Club, Inc. v. Fla Power & Light Co.*, 511 U.S. 222, 222 (1994) (citing *AmClyde*, 511 U.S. at 202).

Likewise, we have held that *AmClyde*'s proportionate liability scheme bars a settling tortfeasor from seeking contribution from a non-settling tortfeasor. *Ondimar Transportes Maritimos v. Beatty St. Props., Inc.*, 555 F.3d 184, 187 (5th Cir. 2009). Nor may a settling tortfeasor seek recovery from a non-settling tortfeasor based on an assignment of the property damage claim by the plaintiff. *Lexington Ins. Co. v. S.H.R.M. Catering Servs., Inc.*, 567 F.3d 182, 185 (5th Cir.

2009); *Ondimar*, 555 F.3d at 189. However, in both *Ondimar* and *Lexington*, we indicated that when a settling tortfeasor obtains a full release[2] from the plaintiff for all parties, an action for contribution might not conflict with *AmClyde*. We now make explicit what we have previously implied and hold that *AmClyde* does not prevent an action for contribution for a settling tortfeasor who obtains, as part of its settlement agreement with the plaintiff, a full release for all parties.

As discussed above, in order to bring a claim for contribution, the settling tortfeasor must have (1) paid more than he owes to the plaintiff, and (2) have discharged the plaintiff's entire claim. The *AmClyde* court held that a litigating defendant could not pursue a settling defendant for contribution, because the litigating defendant would, under the proportionate share rule, pay only his share of the judgment. *AmClyde*, 511 U.S. at 221. Because a right of contribution requires that a defendant pay more than he owes, and the proportionate share rule dictates that a defendant pays only his share of the judgment—no more, no less—a litigating defendant could never have a contribution claim, by definition. By extension, the amount a settling defendant, who obtains only a release for himself, pays represents only his share of the judgment, regardless of the actual dollar amount. *Id.*; *Murphy v. Fla. Keys Elec. Coop. Assoc.*, 329 F.3d 1311, 1314 (11th Cir. 1314). Therefore, he too has no claim for contribution as long as the settlement represents only his portion of the damages.

Where the settling tortfeasor takes an assignment of the plaintiff's claim, then the settling tortfeasor essentially steps into the plaintiff's shoes and pursues the plaintiff's claim. In that scenario, the plaintiff's claim is not extinguished. And, as we discussed in *Ondimar*, allowing assignment of a claim

---

[2] For the purposes of this opinion, "full release" indicates that the plaintiff has released all potential tortfeasors from liability, regardless of whether the potential tortfeasor is a party to the settlement giving rise to the full release.

undermines the goals of *AmClyde. Ondimar*, 555 F.3d at 188–89. Further, there are strong policy reasons for not allowing a settling defendant to take an assignment of a tort claim under these circumstances. *Id.* at 188 (citing *Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19, 22 (Tex. 1987)).

If, however, the settling defendant discharges the plaintiff's entire claim as evidenced by a total release of all potential joint tortfeasors, then the settling defendant has met the requirements for a contribution claim. Because he is responsible for only his portion of the damages, and he paid the entire amount, he has paid more than he owes. And, because he has obtained a release of all other potential joint tortfeasors, he has extinguished the plaintiff's claim. Therefore, he may bring a claim for contribution against the non-settling potential tortfeasors.

In the instant case, United settled with Combo. As part of the settlement agreement, Combo released both United and Carnival, among others, from liability for damages to the M/V ALKMAN. Additionally, Combo assigned all of its rights, claims, and causes of action for damage to the M/V ALKMAN to United. Therefore, we find that although the assignment is invalid under *Ondimar* and *Lexington*, United may bring a claim for contribution against Carnival. Accordingly, this appeal is not moot. Therefore, the court will proceed to the merits of the appeal.

### III.The Rule of *THE LOUISIANA*

### 1.    Standard of Review

"We review a grant of summary judgment de novo, applying the same standard as the district court." *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

## 2.    Awash in Maritime Presumptions

"Liability in collision and allision cases has always been apportioned based on fault." *Fisher v. S/Y NERAIDA*, 508 F.3d 586, 593 (11th Cir. 2007). Maritime law, however, uses evidentiary, fault, causation, and other presumptions throughout its resolution of negligence suits. SCHOENBAUM, *supra*, § 14-3 (4th ed. 2004). These presumptions shift the burden of production and persuasion to the defendant.

### A.    Fault in Allisions

Two common presumptions are presumptions of fault, based on the rules articulated in *THE OREGON*, 158 U.S. 186, 15 S. Ct. 804 (1895) and *THE LOUISIANA*, 3 Wall. (70 U.S.) 164 (1865). The rule of *THE OREGON* creates a presumption of fault that shifts the burden of production and persuasion to a moving vessel who, under her own power, allides with a stationary object. *THE OREGON*, 158 U.S. at 192–93; *James*, 686 F.2d at 1132 n.2. The rule of *THE LOUISIANA* creates the same presumption for a vessel who drifts into an allision with a stationary object. *THE LOUSIANA*, 3 Wall. (70 U.S.) at 173; *James*, 686 F.2d at 1131–32. Both of these presumptions are closely related to the doctrine of *res ipsa loquitor* which creates a rebuttable presumption of fault on the part of the person controlling the instrumentality. SCHOENBAUM, *supra*, § 14-3. And, although the two presumptions apply to different types of vessels—vessels under their own power and drifting vessels—the courts treat them similarly, looking to law on one to inform decisions on the other. *See S/Y NERAIDA*, 508 F.3d at 593 (doctrines are the same except the vessels to which they apply); *City of Chicago v. M/V MORGAN*, 375 F.3d 563, 572 n.11 (7th Cir. 2004); *Rodi Yachts, Inc. v. Nat'l Marine, Inc.*, 984 F.2d 880, 886 (7th Cir. 1993) (Posner, J.); *James*, 686 F.2d at 1132 n.2.

These presumptions shift the burden of production and persuasion on the issue of fault. They are "'[e]videntiary presumptions . . . designed to fill a factual

7

vacuum. Once evidence is presented . . . presumptions become superfluous because the parties have introduced evidence to dispel the mysteries that gave rise to the presumptions.'" *In re Mid-South Towing Co.*, 418 F.3d 526, 531 (5th Cir. 2005) (quoting *Rodi Yachts*, 984 F.2d at 887); *see also In re Omega Protein, Inc.*, 548 F.3d 361, 368–69 (5th Cir. 2008). *But see Bunge Corp. v. M/V FURNESS BRIDGE*, 558 F.2d 790, 795 n.3 (5th Cir. 1977) ("[W]e reject the holding of the Third Circuit that when both sides had 'fully presented testimony regarding their version as to what happened prior to the collision . . . the presumption disappeared as a matter of law.'" quoting *Pa. R.R. Co. v. S.S. Marie Leonhardt*, 320 F.2d 262, 264 (3d Cir. 1963))). And, they must be properly confined to the issue of breach only—not "causation (either in fact or legal cause) or the percentages of fault assigned to the parties adjudged negligent." *Mid-South Towing*, 418 F.3d at 532. "Application of [one of these presumptions] does not supplant the general negligence determination which requires a plaintiff to prove the elements of duty, breach, causation and injury by a preponderance of the evidence." *M/V MORGAN*, 375 F.3d at 572–73 (citing *Bunge Corp.*, 558 F.2d at 798; *Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co.*, 377 F.2d 724, 726 (5th Cir.1967)).

In a recent case regarding damage to a dock from an allision with a pleasure yacht drifting during Hurricane Frances, the Eleventh Circuit outlined the three ways in which a defendant could rebut the presumptions established by both *THE LOUISIANA* and *THE OREGON*. *S/Y NERAIDA*, 508 F.3d at 593.

> The defendant can demonstrate: (1) that the allision was the fault of the stationary object; (2) that the moving vessel acted with reasonable care; or (3) that the allision was an unavoidable accident. . . . Each independent argument, if sustained, is sufficient to defeat liability.

*Id.* (internal quotations omitted); *see also Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.2d 206, 211 (2d Cir. 2009).

The first route is essentially the contributory negligence route. *S/Y NERAIDA*, 508 F.3d at 593. For example, the drifting vessel may argue that the operator of the dock was also negligent in failing to moor the drifting vessel properly. *Rodi Yachts*, 984 F.2d at 889. Or, a vessel under its own steam may argue that its allision was caused by the improper placement of a navigational buoy. *Inter-Cities Navigation Corp. v. United States*, 608 F.2d 1079 (5th Cir. 1979) (Brown, J.).

The second route requires the defendant to negate negligence. *S/Y NERAIDA*, 508 F.3d at 593. Here, the moving vessel bears the burdens of production and persuasion, and the risk of non-persuasion. *James*, 686 F.2d at 1132. "The appropriate standard of care in this regime is based upon '(1) general concepts of prudent seamanship and reasonable care; (2) statutory and regulatory rules . . . ; and (3) recognized customs and usages.'" *S/Y NERAIDA*, 508 F.3d at 594 (quoting SCHOENBAUM, *supra*, § 89); *Bunge*, 558 F.2d at 802.

The third route places the most difficult burden on the defendant, because as a superceding causation argument it can free the moving vessel from all liability. *S/Y NERAIDA*, 508 F.3d at 596.

> If the drifting or moving vessel offers as a defense that the collision was an unavoidable accident or vis major, "[t]he burden of proving inevitable accident or Act of God rests heavily upon the vessel asserting such defense." The vessel must show that the accident could not have been prevented by "human skill and precaution and a proper display of nautical skills[.]"

*James*, 686 F.2d at 1132 (quoting *Petition of United States*, 425 F.2d 991, 995 (5th Cir. 1970)). The case of *THE LOUISIANA* was an Act of God case. 3 Wall. (70 U.S.) at 173. There, the steamer LOUISIANA loosed her moorings in a stiff breeze and drifted into a collision with the steamer FLUSHING which was

aground and out of the channel or course of passing vessels. *Id.* The Court found that although the wind and tide had risen considerably, "[t]he drifting of this vessel was not caused by any sudden hurricane which nautical experience could not anticipate." *Id.* The Court concluded that the collision was caused by inadequate mooring and held the LOUISIANA liable for the collision damage. *Id.* Notably, though the Eleventh Circuit's drifting yacht case, *S/Y Neraida*, also involved a hurricane, the argument that prevailed there was not the Act of God argument, but rather the argument that the yacht's owner took reasonable precautions when securing the yacht in light of the impending storm. Arguably, the NERAIDA could have tried the Act of God route to exoneration had it failed to demonstrate reasonable care.

### B.    Swells and Suction of Passing Vessels

In addition to the presumptions of fault placed on moving vessels in allisions, maritime law recognizes—although not as widely—a presumption of fault on a passing vessel when its wake causes damage to a properly moored vessel. *See West India Fruit & Steamship Co. v. Raymond*, 190 F.2d 673, 674 (5th Cir. 1951); *New Orleans Steamboat Co. v. M/T HELLESPONT GLORY*, 562 F. Supp. 391, 392 (E.D. La. 1983) (quoting *Shell Pipe Line Corp. v. M/T CYS ALIANCE*, 1982 A.M.C. 389, 395 (E.D. La. 1981)); SCHOENBAUM, *supra*, § 14-2. The passing vessel may rebut the presumption of fault by showing that it took reasonable care in passing. *Id.* Alternatively, it may demonstrate that the stationary vessel was improperly moored. *New Orleans Steamboat*, 562 F. Supp. at 392.

### C.    Colliding Presumptions

If the two parties to a collision or allision suit each have a presumption of fault against them, then it is likely that the presumptions would merely cancel each other out. In *Rodi Yachts*, Judge Posner examined this question. In that case, a moored barge slipped its moorings and allided with a dock and two other

10

vessels. *Rodi Yachts*, 984 F.2d at 881. The barge owner impleaded the dock owner, claiming that the dock had improperly moored the barge. *Id.* The plaintiffs—the owners of the damaged property—had the rule of *THE LOUISIANA* working in their favor. *Id.* at 886. While the barge owner also had a presumption against the dock. *Id.* at 887. "[I]f a vessel that has been docked for a substantial period of time breaks loose from its moorings and an accident results, the operator of the dock shall have the burden of proving that the breaking loose was not the result of his negligence." *Id.* The Court examined two main questions in resolving the issue: (1) against whom do the presumptions operate; and (2) what happens when the presumptions clash.

First, the Court examined the presumption against the drifting vessel—here, the barge. It found that the drifting vessel presumption did not operate between co-defendants.

> The issue [on appeal] is not the allocation of responsibility for the accident between the owner of the drifting vessel and the owners of the stationary objects that were damaged by it. The issue is the allocation of responsibility between the owner and the third party that let the vessel slip its mooring and drift into collision with the plaintiffs' property. The drifting-vessel presumption is not designed for the allocation of liability between the injurers, as distinct from the allocation of the loss between them and their victims, and although occasionally mentioned in the former context as well it does not control decision there, as well shown by *Pasco Marketing, Inc. v. Taylor Towing Service, Inc.*, 554 F.2d 808 (8th Cir.1977), and *Lancaster v. Ohio River Co.*, 446 F.Supp. 199, 202 and n.1 (N.D.Ill.1978). For while as between drifting vessel and stationary object struck by it common sense suggests that the former is more likely to have been at fault in the collision than the latter, there is no similar "presumption" when the issue is whether the drifting vessel itself or the dock that, as it were, let it drift was at fault in the subsequent collision of the vessel with a stationary object.

*Id.* at 886. Therefore, the Court found that the presumption against the drifting vessel did not apply to the issue of comparative fault.

This Court, although presented with this argument in *Mid-South Towing*, did not reach the issue of the directionality of presumptions. *Mid-South Towing*, 418 F.3d at 531. We found instead that the district court had determined fault based on the facts in the case without resort to the presumptions. *Id.* Citing *Rodi Yachts* with favor, we explained that with the presence of evidence of fault in the record, the need for presumptions evaporates. *Id.* (citing *Rodi Yachts*, 984 F.2d at 887).

In *Rodi Yachts*, the Seventh Circuit went on to determine that if the two presumptions had clashed, they would have disappeared, leaving the burdens of production and persuasion in their original pre-presumption state. *Id.* at 887. There, however, the Court found that there was sufficient evidence in the record to dispense with the presumptions altogether. *Id.*

## D.    Presumptions and Comparative Fault

In *United States v. Reliable Transfer Co., Inc.*, the Supreme Court ushered in the practice of comparative fault in maritime collision law.

> We hold that when two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault, and that liability for such damages is to be allocated equally only when the parties are equally at fault or when it is not possible fairly to measure the comparative degree of their fault.

421 U.S. 367, 411, 95 S. Ct. 1708 (1975). The presumptions under the rules of *THE LOUISIANA* and *THE OREGON* do not affect this principle. *See, e.g., Mid-South Towing*, 418 F.3d at 532 ("[P]roperly cabined the scope of the *Oregon* rule, which speaks explicitly only to a presumed breach on the part of the alliding vessel, and is not a presumption regarding either the question of causation (either cause in fact or legal cause) or the percentages of fault assigned parties adjudged negligent."); *accord M/V Morgan*, 375 F.3d at 578 (applying

12

presumption and dividing the damages); *Hood v. Knappton Corp.*, 986 F.2d 329, 332–33 (9th Cir. 1993) (applying presumption and dividing damages); *Rodi Yachts*, 984 F.2d at 888–89 (applying presumption and remanding for further findings on apportionment of damages).

## 3. Application

The district court applied the rule of *THE LOUISIANA* improperly when it (1) applied the presumption between co-defendants; (2) applied the wrong standard of proof for rebutting the presumption; and (3) interpreted the presumption as a presumption of *sole* liability. First, the district court improperly applied the drifting vessel presumption in favor of Carnival and against United. Carnival moved for summary judgment based on the argument that United could not overcome the presumption of fault against it under the rule of *THE LOUISIANA*. The district court not only incorrectly applied the drifting vessel presumption between co-defendants, but also applied the Act of God test—"the vessel must show that the accident could not have been prevented by human skill and precaution and a proper display of nautical skills"—instead of the reasonableness test for negating negligence. The district court reviewed evidence on the mooring system and the maintenance records and found that the expert's testimony regarding "the mooring equipment's adequacy . . . [is] not sufficient to satisfy the burden imposed by *James*."

Second, the district court addressed United's argument that Carnival, under the passing vessel presumption, had the burden to show that it navigated prudently. The district court first found that the drifting vessel presumption effectively trumped the passing vessel presumption. Therefore, the district court placed upon United the burden to show that the Carnival ship navigated imprudently. United was unable, in the district court's opinion, to meet this burden. Notably, the passing vessel presumption first requires the moored vessel to demonstrate that it was properly moored before the burden is shifted

13

to the passing vessel.  Had the district court, using a reasonableness standard, determined that the United barges were not properly moored, then the presumption would not have operated against Carnival.  However, the district court found that United was unable to rebut the presumption of negligence against it based on an improper Act of God standard.  Therefore, there are insufficient findings in the record to determine whether the passing vessel presumption should have been applied against Carnival.

Additionally, although the district court made no explicit finding on this point, its ruling and subsequent dismissal of Carnival as a party suggest that it interpreted the drifting vessel presumption as a presumption of *sole* fault on the part of the drifting vessel.  This assumption simply cannot square with the case law and "[t]he rule in admiralty . . . that joint tortfeasors are entitled to allocate a plaintiff's damages among themselves in accordance with their relative fault." *Rodi Yachts*, 984 F.2d at 885 (citing *Reliable Transfer*, 421 U.S. at 411).  Even assuming arguendo that the court had properly applied the rule in *THE LOUISIANA* to United relative to Carnival, and properly discarded the presumption against a passing vessel, United should still be entitled to present evidence of comparative fault at trial.  *Mid-South Towing*, 418 F.3d at 532.

### III.  Conclusion

For the foregoing reasons, the district court's grant of partial summary judgment in favor of Carnival, and its judgment against United on all of its claims against Carnival are REVERSED.  This case is REMANDED to the district court for further proceedings consistent with this opinion.

09-30592

EMILIO M. GARZA, Circuit Judge, dissenting:

The majority opinion depends on the validity of a release contained in a Receipt, Release, Indemnity and Assignment Agreement between Combo and United, which was received by the courtroom deputy at oral argument. That document is not part of the record in this appeal. Nor is it part of the district court record as the agreement was reached after the district court granted summary judgment in Carnival's favor. Without a formal submission of the agreement and its acceptance into the record, we cannot consider it. *See, e.g.*, *In re GHR Energy Corp.*, 791 F.2d 1200, 1201–02 (5th Cir. 1986) ("[T]his court is barred from considering filings outside the record on appeal . . . .").

Although appellate courts have the discretion to supplement the record on appeal with evidence not reviewed by the court below, *see Dickerson v. Alabama*, 667 F.2d 1364, 1367 (5th Cir. 1982), we should do so charily. I would not exercise this court's discretion to accept the agreement into the record. At this time, there has been no determination that the agreement received at oral argument is a valid, accurate, and complete copy or otherwise competent and admissible evidence under the Federal Rules of Evidence. The document on which this appeal turns is materially different in kind from the types of documents which we have allowed to be supplemented on appeal. *See, e.g.*, *In re GHR*, 791 F.2d at 1202 (ordering supplementation of appellate record with notice of appeal filed in the district court); *Dickerson*, 667 F.2d at 1367 (ordering supplementation of appellate record with state court trial transcript). Moreover, I question whether joint submission of the agreement by United and Carnival would even be sufficient, since Combo, one of the parties to the agreement, is not a party to this appeal. It very well may be that an evidentiary hearing is needed to determine the validity and scope of the agreement, especially in light of the fact that one of the parties to the agreement is not before the court.

09-30592

I would hold judgment in abeyance, remand to the district court to create a record and to consider, in the first instance, the validity of the release and whether it moots this case.

Accordingly, I respectfully dissent.