08-0639-cv
Zerega Avenue v. Hornbeck Offshore

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2008

Heard: March 23, 2009                    Decided: July 6, 2009

Docket No. 08-0639-cv

- - - - - - - - - - - - - - - - - - - - - -
ZEREGA AVENUE REALTY CORP. and FRED
TODINO & SONS, INC.,
     Plaintiffs-Counter-Defendants-
     Appellees,

                    v.

HORNBECK OFFSHORE TRANSPORTATION, LLC,
     Defendant-Counter-Claimant-
     Cross-Defendant-Appellant.
- - - - - - - - - - - - - - - - - - - - - -

Before: FEINBERG, NEWMAN, and KATZMANN, <u>Circuit Judges</u>.

Appeal from the January 8, 2008, judgment of the United States District Court for the Southern District of New York (Kevin N. Fox, Magistrate Judge), awarding damages resulting from an allision between a barge and a bulkhead.  The Court of Appeals rules that the District Court erred in applying the <u>Oregon</u> rule to create a presumption with respect to causation, and in precluding expert testimony offered by the Defendant.

Judgment reversed, award vacated, and case remanded.

Joseph T. Stearns, New York, N.Y. (Gino A. Zonghetti, Kenny, Stearns & Zonghetti LLC, New York, N.Y., on the brief), for Defendant-Appellant.

Alex Spizz, New York, N.Y. (Scott A. Markowitz, Todtman Nachamie Spizz & Johns, P.C., New York, N.Y., on the brief), for Plaintiffs-Appellees.

JON O. NEWMAN, <u>Circuit Judge</u>.

This appeal primarily concerns the proper application of the presumption of fault, applicable in maritime law, known as the "<u>Oregon</u> rule." <u>See</u> <u>The Oregon</u>, 158 U.S. 186 (1895). Defendant-Appellant Hornbeck Offshore Transportation, LLC ("Hornbeck") appeals from the January 8, 2008, judgment of the District Court (Kevin N. Fox, Magistrate Judge), finding Hornbeck liable to Plaintiffs-Appellees Zerega Avenue Realty Corp. ("Zerega") and Fred Todino & Sons, Inc. ("Todino & Sons") for more than $1.5 million in damages. <u>See</u> <u>Zerega Avenue Realty Corp. v. Hornbeck Offshore Transportation, LLC</u>, No. 04 Civ. 9651, 2007 WL 3125318 (S.D.N.Y. Oct. 23, 2007). The damages were awarded because of an allision[1] between Hornbeck's barge and a bulkhead on Zerega's property abutting Westchester Creek in Bronx County, New York. Hornbeck principally claims that the Court erred by applying a presumption in favor of Zerega on the issue of causation and by

---

[1]"An allision is a collision between a moving vessel and a stationary object." <u>Weyerhaeuser Co. v. Atropos Island</u>, 777 F.2d 1344, 1346 n.1 (9th Cir. 1985).

-2-

excluding the testimony of Hornbeck's experts.  We conclude that the Oregon rule's presumption of fault does not shift from a plaintiff the burden of proving causation, and that the preclusion of Hornbeck's expert testimony was an abuse of discretion.  We therefore reverse the judgment, vacate the award, and remand.

## Background

Zerega and Todino & Sons own property along Westchester Creek (the "Zerega property").  At the waterfront of the Zerega property, there is a bulkhead (also called a retaining wall or relieving platform) and, farther inland, a one-story office building with a basement.  Hornbeck owns and operates the tug STAPLETON SERVICE (the "tug") and the Barge ENERGY 2201 (the "barge"), which is approximately 250 feet long and 50 to 60 feet wide.

In October 2005, the Plaintiffs-Appellees commenced an action for damages against their insurance carriers and Hornbeck.  The amended complaint alleged that on October 29, 2002, Hornbeck's barge, while being pulled by its tug, struck the bulkhead on the Zerega property due to Hornbeck's negligent operation while traveling south on Westchester Creek.  It further alleged that the allision resulted in the rapid and severe weakening of the bulkhead, which caused most of the bulkhead to collapse nearly two weeks later.  The Plaintiffs-Appellees sought damages for repair of the bulkhead and the office building.  After a four-day bench trial, the Magistrate Judge found Hornbeck liable for negligently causing damage to the bulkhead and the

-3-

office building and entered an award of $1,505,353, plus pre- and post-judgment interest, in favor of Zerega and Todino & Sons.[2]

The Magistrate Judge, trying the case by consent, see 28 U.S.C. § 636(c), found that Hornbeck's tug was pulling the barge, in light condition, southbound in Westchester Creek toward Unionport Bridge. The tug was being operated by Mate Steven Spurlock with assistance from Training Mate Eric Fuerstinger. Spurlock and Fuerstinger stalled the vessels in the immediate vicinity of the Zerega property in mid-afternoon, while waiting in the narrow channel for the Unionport Bridge to open. During that time, Spurlock became concerned that the stern of the barge was drifting too close to the bulkhead of the Zerega property, and that the wind, which the Court found to be blowing toward the bulkhead, would cause the barge in its light condition to hit the retaining wall. Spurlock maneuvered the tug in an attempt to straighten the barge. As the Court found, Spurlock could not see the rear end of the barge while operating the tug, and Fuerstinger did not have a direct view of the rear of the barge on the starboard side.

The Court found, on the testimony of four witnesses, that the barge allided with the bulkhead structure on the Zerega property. Christopher Todino ("Todino"), principal of Todino & Sons, and his

_____

[2]The insurance company defendants have apparently settled, and, in any event, are not named in the judgment.

-4-

business guest, Michael Justino ("Justino"), were meeting in an office located at the southern end of the office building at around 3:30 p.m. They each testified that they suddenly felt a strong jolt and observed from the office window a barge being pulled away from the Zerega property by a tug. Louis Bruno, an office manager of Todino & Sons, working in the center of the office building at around 3:30 p.m., testified that he felt a thump, heard Todino and Justino yelling, and ran to a window from which he observed a barge being pulled away from the bulkhead by a tug. Laura Bruno, vice-president of Todino & Sons, testified that, upon hearing Todino and Justino yelling, she went to a window of the office building and observed a barge being pulled away from the Zerega property by a tug.

At trial, there was no dispute that on November 11, 2002, nearly two weeks after the allision, a significant portion of the bulkhead on the Zerega property collapsed into Westchester Creek. However, the parties disputed the cause of the collapse and sought to introduce the opinions of expert witnesses to support their competing theories. Zerega was permitted to introduce the expert testimony of Steven Schneider ("Schneider"), a professional engineer, that the bulkhead structure collapsed because either: (a) Hornbeck's barge struck the retaining wall, causing the piles to shift, and, as the piles moved back, they ripped the planking hardware off the steel, which undermined the retaining wall; or (b) timber or a pole, latched on to Hornbeck's barge, was dragged along the face of the retaining wall,

-5-

like a stick being pulled along a picket fence, and destroyed the planking that was holding the earth underneath the structure in place, thereby causing the structure to collapse.

The Court precluded Hornbeck from introducing the expert testimony of Roderic Ellman ("Ellman") and Pierce Power ("Power"), both professional engineers. Preclusion was ordered because the Court deemed Hornbeck to have failed to comply with a pretrial order of the Court. That order stated that "on or before March 22, 2006, the parties shall provide to the Court such information as they reasonably believe will enable the Court to fulfill the gatekeeping responsibilities imposed upon it by the Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993)."

Ellman, one of the precluded witnesses, would have offered the opinion that the cause of the bulkhead collapse was horizontal forces applied from the direction of the land against the bulkhead structure, whose wood pilings had become disconnected due to the corrosion of the metal fasteners and had deteriorated due to the natural biological decay of the timber. Power would have offered the opinion that the barge did not strike the bulkhead.

Although the testimony of Ellman was precluded, Hornbeck was permitted to introduce other evidence regarding the deterioration of the bulkhead. Hornbeck introduced the pretrial deposition testimony of Paul Cirillo, who owned the Zerega property from the late 1960s to

-6-

the mid-1990s, that a sinkhole would develop in the bulkhead structure every eight to twelve months and require filling, and that in July and August of 2002, he observed a small sinkhole in the bulkhead of the Zerega property, which grew larger over time. Spurlock and Fuerstinger also stated through direct testimony that they observed a sinkhole on the Zerega property when they passed it on October 29, 2002. The District Court determined that the testimony of Cirillo, Spurlock, and Fuerstinger lacked credibility in light of the totality of the evidence and inconsistencies brought out during cross-examination. See Zerega Avenue Realty Corp., 2007 WL 3125318, at *3 & n.3. Apart from that testimony, the only other evidence on which Hornbeck relied was the testimony of Stanley White ("White"), Zerega's expert on the amount of damages. White acknowledged on cross-examination that more than one plausible explanation for the bulkhead's collapse existed and that certain hardware was missing from the area where the bulkhead collapsed, but also stated that the hardware could be at the bottom of the Creek.

In determining Hornbeck's liability, the District Court applied what is known in admiralty law as the "Oregon rule." The Court stated the rule as follows: "It is a well-established proposition of maritime collision law that when a moving vessel collides with a stationary object, an inference of negligence arises and the burden is then upon the owners of the vessel to rebut the inference of negligence." Id. at *5 (internal quotation marks omitted). The Court ruled that, once

-7-

Zerega established that the barge struck the bulkhead, a presumption arose that the barge was being negligently operated. The Court further ruled that Hornbeck could rebut that presumption by showing, by a preponderance of the evidence, that it acted with reasonable care, that the allision was the fault of the stationary object, or that the allision was an unavoidable accident. See id. at *6.

Implicitly concluding that Hornbeck had not rebutted the inference of negligent operation, the Court then applied the Oregon rule to the issue of causation, casting on Hornbeck the burden of rebutting a presumption that its negligence caused Zerega's damages. See id. at *5-*6 & n.4.[3] In evaluating Hornbeck's evidence, the Court

---

[3]The Court's use of the presumption is placed in some doubt by the last sentence of footnote 4: "[E]ven if the burden of proof remained on the plaintiffs to establish causation and damages, once an inference of negligence arose, the plaintiffs met their burden." The sentence could mean either that the inference of negligence is what enabled the Plaintiffs to meet their burden on causation and damages or that, independent of any presumption, the Plaintiffs met their burden on causation and damages by their evidence. The Court apparently relied on the presumption when it stated as a conclusion: "[T]he defendant failed to rebut the presumption of fault, on the part of the tug and barge, for (a) striking the plaintiffs' bulkhead structure, through the negligent operation of the vessel; and (b)

-8-

ruled that Hornbeck "failed to proffer evidence at the trial that would establish, by a preponderance, that the cause of the collapse of the plaintiffs' bulkhead structure was its deterioration and unsound condition." Id. at *6. The Court therefore held Hornbeck liable and, finding White's testimony as to damages to be credible, awarded Plaintiffs-Appellees $1,505,353 for the damage to the bulkhead and the office building, with pre- and post-judgment interest.

## Discussion

On appeal, Hornbeck makes several challenges to the District Court's findings and rulings. We conclude that two of Hornbeck's challenges have merit. Most importantly, we write to clarify the proper application of the Oregon rule in maritime allision cases.

## I. The Presumption of Fault

In admiralty law, liability for collisions and allisions is based upon a finding of fault that caused or contributed to the damage incurred. See 2 Thomas J. Schoenbaum, Admiralty and Maritime Law ("Schoenbaum") § 14-2, at 89 (4th ed. 2004). As in any tort case, the claimant generally has the burden of proving negligence. See East River S.S. Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 859

---

causing the bulkhead structure's collapse." Zerega Avenue Realty, 2007 WL 3125318, at *3 (emphasis added). In any event, at oral argument the parties agreed that the presumption applies only to negligence and not to causation.

-9-

(1986) (noting that admiralty law "recognizes a general theory of liability for negligence"); Schoenbaum § 14-2, at 100. Admiralty law, however, recognizes a presumption, first formulated in The Oregon, that applies when a vessel under its own power allides with an anchored vessel or a stationary object. See 158 U.S. at 192. Under such circumstances, the moving vessel is presumed to be at fault and bears the burden of rebutting the presumption by showing that the allision was the fault of the stationary object, that the moving vessel acted with reasonable care, or that the allision was an unavoidable accident. See id. at 192-93; Folkstone Maritime, Ltd. v. CSX Corp., 64 F.3d 1037, 1050 (7th Cir. 1995); Delta Transload, Inc. v. MV Navios Commander, 818 F.2d 445, 449 (5th Cir. 1987); City of Boston v. S.S. Texaco Texas, 773 F.2d 1396, 1398 (1st Cir. 1985) ("The rule is well settled that when a vessel under its own power collides with an anchored vessel or a navigational structure, the burden of proving absence of fault or vis major rests on the pilot vessel."). The presumption "derives from the common-sense observation that moving vessels do not usually collide with stationary objects unless the vessel is mishandled in some way." Wardell v. Dep't of Transportation, National Transportation Safety Board, 884 F.2d 510, 512 (9th Cir. 1989).

The Appellant initially challenges the District Court's application of the Oregon rule on the ground that the Court erred in finding that Hornbeck's tug did not exercise reasonable care.

Hornbeck claims that it offered evidence of reasonable care through the testimony of Spurlock and Fuerstinger concerning the slow speed at which the tug and barge were operated, the posting of Fuerstinger as lookout in the wheelhouse, and the crew's vigilance in the area of the retaining wall.

"Following a bench trial, we set aside findings of fact only when they are clearly erroneous, and we give due regard to the trial court's credibility determinations." Design Strategy, Inc. v. Davis, 469 F.3d 284, 300 (2d Cir. 2006) (internal quotation marks omitted). The Court found that Spurlock navigated the unloaded barge down the narrow channel into the immediate vicinity of the bulkhead on the Zerega property, became concerned that the barge's stern would drift into the bulkhead, and tried to straighten the barge without either his view of the stern or that of his mate. The Court discredited Spurlock's and Fuerstinger's testimony with respect to the direction of the wind, Fuerstinger's view of the bulkhead from the wheelhouse, and their ability to perceive whether the barge hit the bulkhead.

While the Court did not explicitly state that Hornbeck failed to establish reasonable care, that is the only reasonable inference available from the Court's opinion. Moreover, the Court's invocation of the Oregon rule and its subsequent consideration of the issue of causation leaves no doubt that the Court found that Hornbeck's tug was not operated with reasonable care. The evidence fully supports that finding.

-11-

II. Causation

Although the Oregon rule creates a presumption of negligent operation, it does not create an additional presumption that the allision caused whatever damages are alleged. "[T]he Oregon rule . . . speaks explicitly only to a presumed breach on the part of the alliding vessel, and is not a presumption regarding either the question of causation (either cause in fact or legal cause) or the percentages of fault assigned parties adjudged negligent." In re Mid-South Towing Co., 418 F.3d 526, 532 (5th Cir. 2005) (footnotes omitted). As in any negligence case, the plaintiff in a maritime allision case bears the burden of proving by a preponderance of the evidence that the defendant's negligence caused the alleged damages. See Torch Operating Co. v. M/V BLANCHE CANDIES, Civ. A. No. 92-2282, 1994 WL 320992, at *4 (E.D. La. June 28, 1994).

In the pending case, the District Court concluded that "the defendant failed to rebut the presumption of fault, on the part of the tug and barge, for: (a) striking the plaintiffs' bulkhead structure, through the negligent operation of the vessel; and (b) causing the bulkhead structure's collapse." Zerega Avenue Realty, 2007 WL 3125318, at *6. Applying the Oregon rule's presumption to the issue of causation was error. The burden remained on Zerega and Todino & Sons to establish that the allision resulting from Hornbeck's negligent operation of the tug and barge caused the alleged damages. The improper use of the Oregon rule to spare the Plaintiffs-Appellees the

-12-

burden of proving that the allision, resulting from the Defendants-Appellants' negligence, caused the alleged damages requires a remand.

III. Preclusion of Hornbeck's Expert Testimony

We turn now to Hornbeck's challenge to the preclusion of its expert witnesses. Hornbeck argues that the District Court exceeded its discretion in precluding sua sponte the testimony of Hornbeck's experts Ellman and Power due to Hornbeck's failure to comply with an order of the Court dated March 9, 2006. That order stated that "on or before March 22, 2006, the parties shall provide to the Court such information as they reasonably believe will enable the Court to fulfill the gatekeeping responsibilities imposed upon it by the Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993)." On March 21, one day before the deadline, Hornbeck filed a motion in limine to preclude Zerega from offering the expert opinion of Steven Schneider as to causation and damages. Zerega neither filed a motion in limine nor submitted any other documents concerning its expert witnesses on or before the March 22 deadline. On March 31, after the deadline, Zerega opposed Hornbeck's motion by filing papers, which included Schneider's declaration describing his qualifications and the basis for his opinions. On May 31, Hornbeck filed affidavits containing the direct testimony of four prospective witnesses, including Ellman and Power, in accordance with another of the Court's pretrial orders. On June 12, the Court issued an order precluding Hornbeck from calling its two

-13-

expert witnesses on the basis that "neither the docket sheet . . . nor the Court's chamber's file contains any record of submissions having been made by Hornbeck, in accordance with the Court's March 9, 2006 order, that would have enabled the Court to determine, as required by Daubert, the propriety of permitting Messrs. Ellman and Power to present opinion testimony."

We review the District Court's preclusion order for abuse of discretion. See Softel, Inc. v. Dragon Medical and Scientific Communications, Inc., 118 F.3d 955, 961 (2d Cir. 1997). "In determining whether a district court has exceeded its discretion, we consider the following factors: (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Id. (citing Outley v. City of New York, 837 F.2d 587, 590-91 (2d Cir. 1988)).

Although the trial judge is accorded considerable discretion in enforcing its pretrial orders, we conclude that the order to preclude Hornbeck's two expert witnesses exceeded the discretion of the District Court. Initially we note that the March 9 order was susceptible to some misunderstanding, stating its requirement in terms of what the parties themselves considered to be required for the Court

to meet its <u>Daubert</u> obligation.[4]  More significantly, although both parties failed to comply with the March 9 pretrial order with respect to their own witnesses, only Hornbeck was sanctioned with the preclusion order.  Zerega was permitted to elicit the expert opinion of Schneider, even though the documents Zerega submitted to explain the basis for Schneider's opinions were filed after the Court's deadline.  Moreover, Zerega was also permitted to call White to testify as to damages, even though Zerega did not inform the Court of its intention to call White until May 25.

Furthermore, the testimony of Ellman was critical to Hornbeck's defense on the issue of causation.  Ellman would have offered an opinion, based on his inspection of the bulkhead and the barge on December 9, 2002, that the bulkhead collapse was caused by horizontal forces applied from the direction of the land against a deteriorated, unattached, and undermined platform and not by a barge strike. Without Ellman's testimony, the opinion of Zerega's expert Schneider on the critical issue of causation went uncontroverted.  Power would

_____

[4]The parties' conduct appears to demonstrate some misunderstanding of the March 9 order by both sides.  It was reasonable for Hornbeck to believe that the order required the parties to make any <u>Daubert</u> challenges <u>to their opponent's prospective experts</u>, which Hornbeck in fact made in a timely manner.

-15-

have offered an opinion, based on his inspection of the bulkhead, that the allision did not occur.

Finally, allowing Ellman and Power to testify would not have caused prejudice to Zerega. Zerega had already deposed Ellman and Power during discovery, and since they were prepared to testify, there would have been no need for a continuance.

For these reasons, we conclude that it was an abuse of discretion to preclude Ellman and Power from testifying. On remand, Ellman and Power should be permitted to testify.

IV. Other Evidentiary Rulings

Hornbeck's remaining arguments, challenging a number of the District Court's evidentiary decisions, lack merit. Hornbeck contends that the Court should have precluded the testimony of Schneider as unreliable and, in the absence of his testimony, dismissed the complaint for failure to prove that the allision caused the collapse. The decision to admit expert testimony is left to the broad discretion of the trial judge and will be overturned only when manifestly erroneous. See Salem v. U. S. Lines Co., 370 U.S. 31, 35 (1962); Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996). Our Court has stated that a trial judge should exclude expert testimony if it is speculative or conjectural or based on assumptions that are "so unrealistic and contradictory as to suggest bad faith" or to be in essence "an apples and oranges comparison." Boucher, 73 F.3d at 21 (internal quotation marks omitted). "[O]ther contentions that

-16-

the assumptions are unfounded go to the weight, not the admissibility, of the testimony." Id. (internal quotation marks omitted).

Hornbeck's contentions are of the latter variety. Hornbeck argues that Schneider's testimony should have been barred as unreliable because he did not inspect the collapse of the bulkhead until August 2005, performed no engineering calculations, and provided nothing approaching an informed opinion based upon engineering principles. While these shortcomings may diminish the probative value of Schneider's testimony, it was not erroneous for the Court to admit this testimony, which was otherwise based on witness statements, Schneider's inspections of the bulkhead structure from 2001 to 2002, drawings and photographs of the bulkhead, reports and videotapes prepared by the defendants, and approximately thirty years of engineering experience with marine structures.

Hornbeck also challenges the Court's exclusion of photographs purportedly showing sinkholes in the bulkhead that Hornbeck sought to introduce through Christopher Todino. At his pretrial deposition, Todino testified that the photographs showed the Zerega property before the allision. The Court sustained Zerega's objections to the admission of the photographs for lack of a proper foundation.

The standard for admissibility of photographs requires the witness to recognize and identify the object depicted and testify that the photograph is a fair representation of what it purports to portray. See Kleveland v. United States, 345 F.2d 134, 137 (2d Cir.

-17-

1965). Although Todino's witness identified the photographs as "pictures of the relieving platform at 1000 Zerega Avenue," counsel failed to follow up with the customary question as to whether the photographs fairly and accurately portrayed the area shown. The objection for lack of a proper foundation was therefore properly sustained.[5]

Finally, Hornbeck argues that the District Court improperly refused to admit the testimony and email of John Bowie, an employee of Hornbeck, who received a report from Laura Bruno about the allision. For the purpose of impeaching Bruno, Hornbeck sought to introduce her hearsay statement to Bowie that no one at Zerega saw the barge strike the bulkhead and that no one identified the name of the barge until the name was obtained from the operator of the Unionport Bridge. The Court sustained Zerega's objection to the testimony of Bowie on the ground that it was hearsay, and rejected Hornbeck's argument that the statement was admissible as an admission because Laura Bruno was a party to the action. We conclude that the statement was admissible under Federal Rule of Evidence 801(d)(2)(D) because Bruno, as vice-president of Todino & Sons, was the agent of a party to the action acting within the scope of her employment. This error, however, was

---

[5]It would have been preferable for the District Court, when discussing the foundation issue with counsel at sidebar, to have offered the helping hand of a properly framed follow-up question.

harmless because three eye-witnesses testified to feeling the impact of the allision and immediately seeing the tug and barge pulling away, and the District Court found their testimony to be credible.

V. Remedy

The errors in applying the <u>Oregon</u> rule to the issue of causation and in excluding Hornbeck's expert witnesses, Ellman and Power, require a remand. However, the issues of Hornbeck's negligence and the amount of damages need not be retried. Upon remand, the Magistrate Judge should retry only the factual issue of whether the allision occurred and the issue of causation, with the burden of proof on the Plaintiffs. In doing so, the Magistrate Judge should make distinct determinations as to whether the allision, if it occurred, has been shown to have caused damage to the bulkhead and to the office building. If causation is found, as to either or both structures, the findings already made as to the amount of damages sustained by both structures may stand. Since this was a bench trial, the Magistrate Judge may rely on the existing record, supplemented by Ellman's and Power's testimony and whatever additional evidence the Magistrate Judge permits. The Defendants-Appellants' request for reassignment to a different judge is denied.

## Conclusion

The judgment is reversed, the award vacated, and the case remanded for further proceedings consistent with this opinion.

-19-