13-1456-cv
Valente v. Textron, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of March, two thousand fourteen.

PRESENT: REENA RAGGI,
DENNY CHIN,
SUSAN L. CARNEY,
*Circuit Judges*.

------------------------------------------------------------------------

MATTHEW J. VALENTE, JAMES VALENTE, individually and as father of MATTHEW J. VALENTE,
*Plaintiffs-Appellants*,

v.                                                      No. 13-1456-cv

TEXTRON, INC., EZ GO DIVISION OF TEXTRON INC.,
*Defendants-Appellees*.

------------------------------------------------------------------------

APPEARING FOR APPELLANTS:    DAVID H. SCHULTZ (Laurel A. Wedinger, *on the brief*), Barry, McTiernan & Moore LLP, New York, New York.

APPEARING FOR APPELLEES:    DAVID S. OSTERMAN (Andrew J. Scholz, Brendan T. Fitzpatrick, *on the brief*), Goldberg Segalla LLP, Princeton, New Jersey.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Margo K. Brodie, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on March 19, 2013, is AFFIRMED.

Plaintiffs Matthew Valente and James Valente appeal from an award of summary judgment in favor of defendants Textron, Inc. and EZ Go Division of Textron, Inc., on Valente's strict liability and negligence design defect claims for damages allegedly sustained when Valente was operating a golf car manufactured by defendants.[1] Valente contends that the district court erred in precluding the testimony of his expert Kristopher Seluga after a hearing pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and that, even absent Seluga's testimony, the district court erred in granting summary judgment. We assume the parties' familiarity with the underlying facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Expert Testimony

We review a district court's decision regarding the admissibility of expert testimony for abuse of discretion, and will not reverse unless the decision is manifestly

---

[1] Because James Valente's claim is entirely derivative of his son's, our resolution of this appeal as to Matthew Valente applies equally to James Valente. Accordingly, all further references to "Valente" in this order allude to Matthew Valente.

erroneous.  See Olin Corp. v. Certain Underwriters at Lloyd's London, 468 F.3d 120, 133 (2d Cir. 2006).  That is not this case.

Valente contends that the district court abused its discretion in excluding Seluga's testimony that yaw instability—resulting from a design defect in the use of a two-wheel rear braking system as opposed to a four-wheel braking system—was responsible for Valente's accident.  In fact, the district court's thoughtful and thorough explanation for excluding Seluga's testimony convincingly demonstrates that it acted well within its discretion.

Regardless of whether Seluga's simulation model was sufficiently validated, the district court concluded that his opinion testimony was inadmissible based on his use of a 0.53 coefficient of friction to support his conclusion.  Although Valente argues that any concerns about this coefficient go to weight, and not admissibility, it is well-settled that where, as here, a trial judge finds that assumptions underlying expert testimony "are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison," it has the discretion to exclude the testimony.  Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC, 571 F.3d 206, 213–14 (2d Cir. 2009) (internal quotation marks omitted).

There is no dispute that the coefficient of friction was the determining factor in Seluga's opinion that yaw instability was responsible for Valente's accident.  But the 0.53 coefficient of friction used by Seluga, based on flat surface testing, was approximately 40% lower than the coefficient measured by Seluga and defendants'

3

expert on the actual path, as well as the coefficient relied upon by Seluga in a 2006 peer-reviewed article where he concluded that his simulations "consistently" showed that "rear wheel only braking configuration does not lead to large yaw instabilities." J.A. 2942. Thus, the district court acted well within its discretion in concluding that Seluga's 0.53 coefficient derived from testing that was not comparable. Moreover, Seluga admitted that sand and dirt, both of which were present during the tests producing a 0.53 coefficient of friction, could have an impact on the coefficient of friction. Beyond his own observation that the accident path was near locations where sand and dirt were present, however, Seluga was only able to speculate that such conditions were present on the day of the accident. The district court's decision not to credit this speculation was not an abuse of discretion, particularly given Seluga's admission that his photographs of the accident site did not depict sand on the path.

Nor do we identify abuse of discretion in the district court's determination that Seluga's proposed opinion testimony was not supported by simulation results using the 0.53 coefficient of friction. Seluga admitted that he used the 0.53 coefficient because he "wanted to see if this accident could happen in a certain way and the lowest friction value that was measured is the most likely to see if it could happen." J.A. 414–15. Indeed, Seluga continued to use a 0.53 coefficient in his simulations despite acknowledging that the low end of the coefficient range was actually 0.54. Moreover, even assuming the reliability of the 0.53 coefficient, Seluga testified that his simulation would predict a rollover due to yaw instability somewhere between 25% and 50% of the time. The

4

purpose for which Valente sought to offer Seluga's testimony, however, was not that under certain circumstances there was a 25% chance that the accident could have occurred as a result of the defect in the golf car, but rather that the design defect actually caused the accident "to a reasonable degree of engineering certainty." Seluga Expert Rep. 14, J.A. 273. Where, as here, data is "simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony." Ruggiero v. Warner-Lambert Co., 424 F.3d 249, 253 (2d Cir. 2005) (internal quotation marks omitted).

Here, the district court reasonably concluded that Seluga's selection of a 0.53 coefficient of friction and the low prediction rate resulting from the use of this number rendered Seluga's opinion unreliable. Accordingly, we identify no abuse of discretion in the exclusion of Seluga's testimony.

2.     Summary Judgment

We review an award of summary judgment de novo, resolving all ambiguities and drawing all inferences in favor of the nonmovant, and we will affirm only if the record reveals no genuine dispute of material fact. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Nagle v. Marron, 663 F.3d 100, 104–05 (2d Cir. 2011). Under New York law, a plaintiff establishes a prima facie case of product liability for a design defect by showing that (1) the manufacturer marketed a product designed so that it was "not reasonably safe" and (2) the defective design was a substantial factor in causing plaintiff's injury. Voss v. Black & Decker Mfg. Co., 59

5

N.Y.2d 102, 107, 463 N.Y.S.2d 398 (1983). Here, defendants put forth admissible evidence that the brake design was safe, that an alternative design would not have prevented the accident, and that Valente's operation of the golf car caused the accident. With Seluga's testimony properly excluded, the record is devoid of any evidence supporting Valente's theory that the golf car had a design defect or that such a design defect likely caused his accident. See Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 271 (2d Cir. 2002) (affirming district court's grant of summary judgment because, without expert evidence, plaintiffs did not have "any admissible evidence in support of their theory of causation"); Brooks v. Outboard Marine Corp., 234 F.3d 89, 92 (2d Cir. 2000) ("Having determined that the district court acted within its discretion in excluding [plaintiff's expert testimony], the plaintiff has no evidence in the record to support his theory that the motor had a design defect which caused the accident or increased its severity."). Indeed, assuming arguendo that, as Valente contends, the applicable burden of proof required him "simply to establish a reasonable probability that the accident was caused by [defendants'] negligence," Williams v. KFC Nat'l Mgmt. Co., 391 F.3d 411, 420 (2d Cir. 2004), because Valente admitted to turning the wheel and eyewitnesses testified that the golf car collided with a solid object, no reasonable juror could conclude that Valente met this burden based on the circumstantial evidence. Accordingly, the district court properly granted summary judgment to defendants on Valente's strict liability and negligence design defect claims.

6

We have considered Valente's remaining arguments on appeal and conclude that they are without merit. Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

7