In the Matter of the Complaint of MS "ANGELN" GMBH & CO. KG, and Angeln Shipping Company Ltd., as Owner and Bareboat Charterer of the MV Angeln, for Exoneration from Limitation of Liability.

No. 10–CV–4820(GBD).

United States District Court, S.D. New York.

Signed March 26, 2014.

Filed March 27, 2014.

John Devereux Kimball, Blank Rome LLP, New York, NY, for Allianz Global Corporate & Specialty Versicherungs–AktiengeSellSchaft, Amlin Syndicate 2001 at Lloyd's Under Limited Binder JGC

084400, HDI–Gerling Industrie Versicherung AG, Wurttembergische UND Badische Versicherungs–AktiengeSellSchaft, Schwarzmeer UND Ostsee Versicherungs–AktiengeSellSchaft Sovag, Gothaer Allgemeine Versicherung AG, Basler Securitas Vag, Bremen, Victoria Versicherung AG, Hamburg Ergo Versicherungsgruppe AG, Signal Iduna Allgemeine Versicherungs AG, Hamburg, Reaal Verzekeringen, Rotterdam, Lloyds Syndicate, Chaucer, Assikurazioni Generali S.P.A., HDI–Gerling Industrie Versicherung AG, Signal Iduna Allgemeine Versicherungs AG, Hamburg, Allianz Global Corporate & Specialty Versicherungs–AktiengeSellSchaft, Gothaer Allgemeine Versicherung AG.

Gina Maria Venezia, Peter Judge Gutowski, Freehill, Hogan & Mahar, LLP, New York, NY, for Bernuth Lines, Ltd.

Edward P. Flood, Kirk M.H. Lyons, Michael Anthony Namikas, Lyons & Flood, L.L.P., New York, NY, for MSC Mediterranean Shipping Company S.A.

Linda Stephanie Strauss, Coughlin Duffy LLP, New York, NY, for United Insurance Company Limited.

James J. Ruddy, Edward C. Radzik, Lori Jean Quinn, McDermott & Radzik, LLP, New York, NY, for PS International Ltd., et al.

Peter Judge Gutowski, Barbara Grose Carnevale, Gina Maria Venezia, Freehill, Hogan & Mahar, LLP, New York, NY, for Certain Underwriters at Lloyds, Bernuth Lines Ltd.

John Alan Orzel, Carroll, McNulty & Kull, New York, NY, for Panalpina, Inc.

Patrick Carroll Crilley, Patrick Carroll Crilley, New York, NY, for Mitsui O.S.K. Lines, Ltd.

John James Sullivan, Hill, Rivkins & Hayden LLP, New York, NY, for Milleni-

um Inorganic Chemicals, Inc., M/S Engees, N.V., Sueinder Birbhajan.

John Devereux Kimball, Kate Bea Belmont, Blank Rome LLP, New York, NY, for In the Matter of the Complaint of MS "Angeln" GMBH & Co. KG and Angeln Shipping Company Ltd. as Owner and Bareboat Charterer of the M/V Angeln, for Exoneration from or Limitation of Liability.

## MEMORANDUM DECISION
## AND ORDER

GEORGE B. DANIELS, District Judge:

This case arises from the sinking of the M/V Angeln on February 21, 2010, shortly after its departure from Vieux Fort, St. Lucia. The owner and bareboat charterer of the M/V Angeln (i.e., MS Angeln Gmbh & Co. KG and Angeln Shipping Co.) (collectively "Owners") commenced a limitation proceeding seeking to limit their collective liability related to the vessel's sinking (ECF Nos. 1 & 4). Many cargo interests filed suit against the Owners, Bernuth Lines Ltd., and Mediterranean Shipping Company, S.A. ("MSC") for loss of cargo. These actions were consolidated (Id.). Bernuth Lines then filed claims against Owners for losses, including fuel, equipment and containers, and for indemnity and contribution for exposure to cargo interests (ECF 48). In response, Owners filed counterclaims against Bernuth Lines, and its Miami-based agent Bernuth Agencies, Inc., and MSC seeking recovery of direct damages, and indemnity and contribution for exposure to cargo (ECF 82; 83). After the vessel's Hull Underwriters paid off the vessel owner, they filed a complaint in intervention against Bernuth and MSC seeking recovery of the value of the vessel (ECF 93).

Bernuth moves for summary judgment dismissing the Counterclaims filed by Owners and the Complaint in Intervention filed by the vessel's Hull Underwriters, against Bernuth for certain losses from the sinking of the M/V Angeln (ECF 174). In a separate motion, MSC also moves for summary judgment dismissing the Counterclaims filed by Owners and the Complaint in Intervention filed by Hull Underwriters against MSC for certain losses from the sinking of the ship (ECF 168). Bernuth and MSC's motions are GRANTED.

## BACKGROUND

Bernuth Lines operated an inter-island container operation that serviced a variety of islands in the Caribbean and included shipments brought in by feeder vessel from the U.S. (principally Miami) and overseas ports (Decl. of Peter Gutowki ("Gutowski Decl.") Ex. 30; Gutowski Decl. Ex. 31 Davis Tr. 34–35). Bernuth Agencies is the alleged guarantor of Bernuth Lines (ECF 82, Owners' Counterclaim).

MSC is a large Switzerland-based ocean carrier that transports hundreds of thousands of containers throughout the world on a yearly basis, via a fleet of owned and chartered vessels (MSC Supp. Mem. 2). MSC entered into an agreement with Bernuth permitting MSC's containers to be carried aboard Bernuth vessels, including the M/V Angeln (Id.).

The M/V Angeln was under the command of Captain Joseph Fijol at the time of casualty (Bernuth Supp. Mem. 4, 6). The Chief Officer was Peter Chodurski (Bernuth Supp. Mem. 6). Both the Captain and the Chief Officer were employed by and responsible to the Owners. The M/V Angeln was chartered by Bernuth Lines from Angeln Shipping Co. under a time party charter (Gutowski Decl. Ex. 2).

Two provisions of the time charter are at issue.

Clause 8 of the time charter provides:

The Captain (although appointed by the Owners) shall be under the orders and directions of the Charterers as regards employment and agency: and Charterers are to perform all cargo handling (*including lashing, unlashing, securing, stowage, tallying, dunnage*) at their expense under the supervision of the Captain, who is to sign the bills of lading for cargo as presented in conformity with mate's ~~or tally clerk's~~ receipts. (Bernuth 56.1 Pl. Stmt. ¶ 64, added language italicized, strikethrough added).

Clause 75 of the time charter provides: Prior to loading, charterers or their agents shall furnish the master in good time, before cargo operations with shippers' declared weights for containers. Charterers to be responsible for any damages, consequences, delays and expenses as may arise in port or at sea from lack of container weights and/or discrepancies between manifest and actual container weights. (Bernuth 56.1 Pl. Stmt. ¶ 64).

Shortly after the M/V Angeln arrived at St. Lucia on February 21, 2010, Bernuth's local agent came aboard and provided the Chief Officer with an updated list of containers that were to be loaded along with cargo weights as declared by the shipper (Gutowski Decl. Ex. 14, Ex. 3, Fijol Tr. 454). Owners and Hull Underwriters claim that there were discrepancies between the weights provided and the actual weights (*See generally* Bernuth Opp. Mem.). They claim that the weights of the containers loaded in Miami by Bernuth on those vessels were misdeclared and that Bernuth's method for determining the weights of the containers loaded in Miami was grossly negligent, and lacked uniformity, regulation and accuracy (Bernuth 56.1 Pl. Stmt. ¶ 66). Owners and Hull Underwriters point to four potential reasons for the discrepancies: (i) Bernuth's crane operators disregarded the actual weights shown on the crane scale and instead estimated the weights shown; (ii) Bernuth's crane operators communicated weights to the setevedore formen by using hand signals; (iii) Bernuth's crane operator's sometimes did not factor in the estimated weight of the cables when reporting weight; (iv) Bernuth's stevedore foremen estimated and recorded the weight of containers based on visual observation alone, without the use of a scale (Bernuth 56.1 Pl. Stmt. ¶ 66).

The Chief Officer relied on the container list to generate a loading plan that would result in a stable vessel (Bernuth 56.1 Def. Stmt. ¶¶ 35–36). When he was unable to achieve suitable stability, he advised the Captain against loading the cargo (Gutowski Decl. Ex. 4, Chodurski Tr. 532–34; Bernuth Opp. Mem. 9). Captain Fijol directed that all cargo be loaded nonetheless (Gutowski Decl. Ex. 4, Chodurski Tr. 534; Ex. 6 Syber Tr. 110; and Ex. 20 Syber Stmt. 1; Bernuth Opp. Mem. 9–10). As loading progressed, the vessel began to take severe lists with each new container (Bernuth 56.1 Def. Stmt. ¶¶ 48–52). Some crew members were alarmed by the amount of time needed to correct one of these deep lists and eventually donned life jackets and disembarked (Gutowski Decl. Ex. 6, Syber Tr. 350–53; Ex. 20 at 2).

Toward the end of loading, the ship's Captain ordered a discharge of two 40–ft containers from their position on the deck and replaced them with two 20–ft containers still on the dock (Gutowski Decl. Ex. 3, Fijol Tr. 495–96, 511; Bernuth Opp. Mem. 10). Even with this change, the vessel's stability computer indicated that the vessel was in peril (Gutowski Decl. Ex. 4, Chodursky Tr. 587–96). Nonetheless, Captain

Fijol directed that the vessel depart (Gutowski Decl. Ex. 4, Chodursky Tr. 598–99). At this point, the vessel had a starboard list, was over its statutory marks (its load line being submerged) and was positioned such that it was down by the head (Bernuth 56.1 Def. Stmt. at ¶ 57).

Late in the evening on February 21, 2010, the M/V Angeln departed from St. Lucia (Bernuth 56.1 Def. Stmt. at ¶ 57). Barely a mile outside the port, the Angeln rolled over and sank in calm weather (*Id.* at ¶ 58). The crew escaped but the vessel and all cargo were a total loss (*See* ECF 1, Limitation Complaint ¶¶ 9–11).

The vessel's stowage computer and hard drive were retrieved from the sunken ship and sent to Norway for data retrieval (Bernuth Supp. Mem. at 15). The loading plan was replicated in the salvaged hard drive (Gutowski Decl. Ex. 4, Chodursky Tr. 566). The loading plan confirmed the dire stability results (*Id.*).

Bernuth moves for summary judgment dismissing the Counterclaims filed by Owner and the Complaint in Intervention filed by Hull Underwriters. They argue that (i) the vessel sank because it was unseaworthy; and (ii) Owners and Hull Underwriters' tort and breach of contract claims lack the requisite causation element and the charter party never shifted to Bernuth the responsibility for seaworthiness (*Id.*).

MSC moves for summary judgment dismissing the Counterclaims filed by Owner and the Complaint in Intervention filed by Hull Underwriters on the grounds that (i) the breach of contract claim fails because there is no contractual relationship between either MSC and Owners or MSC and Hull Underwriters; and (ii) the tort claim fails because Owners and Hull Underwriters cannot establish breach or causation because there is no evidence that any of the MSC containers were overweight (MSC Supp. Mem. 8–18).

In opposition to Bernuth's motion, the Owners and Hull Underwriters argue that (i) there are issues of material facts concerning the weights of the containers; (ii) the erroneous weight information caused or contributed to the sinking; (iii) Bernuth was responsible for the loss of the vessel to the extent it was caused by misdeclared weights and improper stowage; (iv) Owner's Captain and crew are not incompetent (Bernuth Opp. Mem. 12–23). In opposition to MSC's motion, the Owners and Hull Underwriters argue that there are disputed issues of material facts concerning: (i) the containers MSC delivered; (ii) whether MSC container weights caused or contributed to the condition of the vessel at the time of departure; (iii) whether MSC's container weights caused or contributed to the sinking because the weights were misdeclared; and (iv) the competency of the ship's Captain (MSC Opp. Mem. 8–18).

## LEGAL STANDARD

Summary judgment is appropriate where the evidence, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56; *Vacold, L.L.C. v. Cerami*, 545 F.3d 114, 121 (2d Cir.2008); *Davis v. Blige*, 505 F.3d 90, 97 (2d Cir.2007). The burden to show the absence of genuine issues of fact rests with the party seeking summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party meets its burden, the non-moving party must then come forward with specific facts showing there is a genuine issue for trial. The non-moving party must do more "than simply

show there is some metaphysical doubt as to the material facts" or "rest upon ... mere allegations." *Matsushita Elec. Industr. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir.2000).

In deciding whether summary judgment is appropriate, a trial court is not to weigh the evidence, make credibility determinations or resolve issues of fact, but rather is to determine whether, drawing all reasonable inferences from the evidence presented in favor of the non-moving party, a fair-minded jury could find in that party's favor. *Beatie v. City of New York*, 123 F.3d 707, 710 (2d Cir.1997); *Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004). But if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment is the appropriate vehicle to dispose of the case or the issue under consideration. Fed. R.Civ.P. 56; *Anderson* 477 U.S. at 250, 106 S.Ct. 2505; *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1223 (2d Cir.1994).

## NEGLIGENCE CLAIM AGAINST BERNUTH

■ Under maritime law, the elements to establish a tort claim of negligence are the same as the elements of negligence under common law. *Optical Communs. Group, Inc. v. M/V Ambassador*, 11–cv–4439 (NRB), 938 F.Supp.2d 449, 462–463, 2013 U.S. Dist. LEXIS 50550, *29 (S.D.N.Y. Mar 28, 2013) (citing *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 882 F.Supp.2d 496, 529 (S.D.N.Y.2012), *affd.* 571 F.3d 206 (2d Cir.2009)). Those elements include duty of care, breach of duty, causation, and damages. *Cornfield v. Cornfield*, 156 Fed. Appx. 343, 344 (2d Cir.2005). The claim-

ant in a maritime tort case generally bears the burden of proving the elements of negligence. *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 211 (2d Cir.2009).

■ The Owners and Hull Underwriters allege that Bernuth's breach of its duty resulted in loss of the vessel, its containers and cargo. Owners' theory of liability is that "Bernuth and/or its agents, servants, employees or others for whom it is responsible improperly planned, loaded and stowed cargo on the M/V ANGELN and provided the vessel's [Captain] and/or Chief Officer with incorrect and inaccurate information concerning the weights of the shipping containers and cargo loaded at Port of Spain and Vieux Fort" (ECF 82, Counterclaim ¶ 12). They aver that "[t]he loss of the M/V Angeln and its containers and cargo ... was caused wholly by and due solely to the breach of contract, and fault or negligence of Bernuth, its agents, servants, employees or others for whom it is responsible" (*Id.* at ¶ 13). Hull Underwriters allege the same claims in its Complaint in Intervention (ECF 93).

In their counterclaims, the Owners allege that Bernuth breached the duty of reasonable care by (i) improperly planning, loading and stowing cargo on the M/V Angeln; (ii) failing to provide the Captain of the M/V Angeln with accurate information concerning the weight of cargo loaded on board the vessel; and (iii) loading too many containers on the M/V Angeln at Vieux Fort, St. Lucia. Owners and Hull Underwriters argue that there are genuine issues of material fact as to whether Bernuth caused or contributed to the sinking by misdeclaring the container weights (Bernuth Opp. Mem. 17). According to the Owners and Hull Underwriters, because the Captain and Chief Officer relied on that information in loading the ship, Bernuth contributed to the sinking (*Id* at 18).

In support of their motion, Bernuth argues that Owners and Hull Underwriters failed to show causation between any allegedly errant weights and the sinking of the M/V Angeln (Bernuth Supp. Mem. 2). Rather, Bernuth argues that the Captain's negligence in deciding to take the vessel out to sea despite warnings of the ship's instability was the direct and proximate cause of the sinking of the M/V Angeln[1] (Id.). In opposition, Owners and Hull Underwriters argue that the discrepancies on weights provided by Bernuth contributed to the vessel's sinking[2] (MSC Opp. Mem. 8–18).

The Owners and Hull Underwriters' theory of negligence fails, as a matter of law, due to a lack of causation. There is no evidence that errant weight information provided by Bernuth proximately caused or contributed to the ship's sinking. The information provided, even if errant, accurately warned that the vessel would sink if it were taken out to sea as loaded (Gutowski Decl. Ex. 18, Cushing Tr. 205). The Owners' Captain ignored this warning and decided to sail anyway (Gutowski Decl. Ex. 4, Chodursky Tr. 598–99). The evidence shows that Captain Fijol was provided enough information to have been warned that the ship would sink. His negligence in sailing out of port despite those warnings was the sole preventable cause of the demise of the ship and its cargo.

## BREACH OF CONTRACT CLAIM AGAINST BERNUTH

"[I]n order to prove a breach of contract claim, a plaintiff must establish that his damages were caused by the defendant's wrongful conduct." *Petitt v. Celebrity Cruises,* 153 F.Supp.2d 240, 263 (S.D.N.Y.2001); *See also Bausch & Lomb Inc. v. Bressler,* 977 F.2d 720, 731 (2d Cir.1992); *Jorgensen v. Century 21 Real Estate Corp.,* 217 A.D.2d 533, 629 N.Y.S.2d 268 (2d Dep't 1995). Where, however, a time charterer assumes the "responsibility to load, stow and discharge" the cargo, the ultimate responsibility for seaworthiness remains with the vessel's command, and language such as that contained in the subject charter party does not divest the master from his obligation to the owners to ensure the vessel is seaworthy. *See, e.g. Olsen v. U.S. Shipping Co.,* 213 F. 18, 20–21 (2d Cir.1914); *Yeramex International v. S.S. Tendo,* 595 F.2d 943, 947–948 (4th Cir.1979); *Oxford Paper Co. v. The Nidarholm,* 282 U.S. 681, 684–86, 51 S.Ct. 266, 75 L.Ed. 614 (1931).

A ship is unseaworthy if it is not reasonably fit for its intended use. *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 550, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). The test is whether a vessel, in terms of its equipment and crew, was reasonably fit to undertake the voyage at issue. *See, e.g. Farrell Lines, Inc. v. Jones,* 530 F.2d 7, 10 n. 2 (5th Cir.1976). "The general rule is

1. Bernuth also points to additional evidence of Captain Fijol's alleged incompetence, including that: (i) he previously crashed a vessel under his command, while intoxicated; (ii) his experience was primarily limited to small vessels which did not present the same stowage issues as here; (iii) he did not know how to use the stability computer; and (iv) he could not answer rudimentary questions about vessel stability (See Gutowski Decl. Ex. 24; Bernuth Supp. Mem. 5; Gutowski Decl. E.3, Fijol Tr. 42–44, 58–112; Gutowski Decl. Ex. 3, Fijol at 49; Bernuth 56.1 Def. Stmt. ¶ 11; Compare Gutowski Decl. Ex. 3, Fijol Tr. 50–58 with Ex. 19, Captain Bergen's testimony at 70–74).

2. Owners and Hull Underwriters also argue that the Captain was highly competent, with over 30 years of experience, including as Captain of the M/V Angeln prior to this incident (Bernuth 56.1 Pl. Stmt. ¶ 68–70). They also argue that Captain Fijol had reviewed numerous loading plans for those vessels while serving as Captain. (MSC Opp. Mem. ¶ 70).

that the vessel must be staunch, strong, well equipped for the intended voyage and manned by a competent and skillful master of sound judgment and discretion." *Tug Ocean Prince, Inc. v. U.S.*, 584 F.2d 1151, 1155 (2d Cir.1978). Unseaworthiness therefore may result from failures which make the vessel ill-suited for its duties or from the vessel being manned with incompetent crew. *Hercules Carriers, Inc. v. State of Fl.*, 768 F.2d 1558, 1565–1566 (11th Cir.1985). Consequently, a vessel is unseaworthy when it sails over its marks, with a list, and/or without sufficient stability, or with officers that are incapable of operating the vessel's basic equipment. *See Trico Marine Assets Inc. v. Diamond D. Marine Servs.*, 332 F.3d 779, 790 (5th Cir.2003); *In re Long*, 293 F.Supp. 172, 175 (S.D.N.Y.1968), *aff'd*, 439 F.2d 109 (2d Cir.1971); *Ionion Steamship Co. v. United Distillers of America, Inc.*, 236 F.2d 78, 81 (5th Cir.1956); *Todd Shipyards Corp. v. United States*, 391 F.Supp. 588 (S.D.N.Y. 1975); *The Vestris*, 60 F.2d 273 (S.D.N.Y. 1932); *see also The Indien*, 71 F.2d 752, 761–762 (9th Cir.1934); *Andros Shipping Co. v. Panama Canal Co.*, 184 F.Supp. 246, 258 (D.C.Z.1960).

Owners' and Hull Underwriters' breach of contract claims arise from clauses 8 and 75 of the time charter, which allegedly make Bernuth responsible for the vessel's condition to the extent it was unseaworthy at the time of departure from Vieux Fort (Bernuth Opp. Mem. 3). Owners and Hull Underwriters allege that under clause 8 of the time charter, Bernuth was responsible for all cargo handling, under the supervision of the Captain, who for this purpose, Owners and Hull Underwriters argue, served as an agent of Bernuth (*Id.*). Owners and Hull Underwriters allege that by misdeclaring weight information, Bernuth is responsible for the sinking of the vessel.

Owners and Hull Underwriters further allege that, under clause 75, Bernuth was responsible for providing accurate container weights to the Master and Chief Officer of the M/V Angeln (Bernuth Opp. Mem. 4). Clause 75 of the time charter provides that the charterer must furnish a container list with weights and is responsible for damages resulting from any discrepancies (Bernuth 56.1 Stmt. ¶ 64). Bernuth allegedly breached this obligation by providing errant weight information to the Captain.

In support of their motion, Bernuth argues that the ship's officers could not operate the stability computer, lacked a fundamental understanding of principles of stability, and loaded the vessel below its mark, and that the vessel was allowed to sail in an overloaded condition, with a list and virtually no stability (Bernuth Supp. Mem. 20). They argue that, as a matter of law, these circumstances rendered the ship unseaworthy and there can be no legitimate dispute that this unseaworthiness caused the vessel to sink (*Id.*).

▮ The Owners' and Hull Underwriters' breach of contract claim fails. Clause 8 of the time charter merely identifies which party is responsible for loading the cargo and contains no language regarding allocation of liability in the event of loss. Importantly, it does not make the charterer ultimately responsible for seaworthiness. *See, e.g. Olsen v. U.S. Shipping Co.*, 213 F. 18, 20–21 (2d Cir.1914); *Yeramex International v. S.S. Tendo*, 595 F.2d 943, 947–948 (4th Cir.1979); *Oxford Paper Co. v. The Nidarholm*, 282 U.S. 681, 684–86, 51 S.Ct. 266, 75 L.Ed. 614 (1931).

▮ Clause 75 provides the charterer with the obligation to furnish a container list with weights and makes that party responsible for damages resulting from any discrepancies. Owners and Hull Underwriters' breach of contract claim under this clause likewise fails because they have

 

not adduced sufficient facts to establish that the damages were caused by the defendant's wrongful conduct. *See Petitt v. Celebrity Cruises,* 153 F.Supp.2d 240, 263 (S.D.N.Y.2001); *Bausch & Lomb Inc. v. Bressler,* 977 F.2d 720, 731 (2d Cir.1992); *Jorgensen v. Century 21 Real Estate Corp.,* 217 A.D.2d 533, 629 N.Y.S.2d 268 (2d Dep't 1995). The evidence points to the contrary result. The weight information, despite possibly having some discrepancies with the actual weight of the containers, accurately reflected that the ship was in peril and should not have been taken out to sea by its Captain (Gutowski Decl. Ex. 18, Cushing Tr. 205). Despite these clear warnings, Captain Fijol decided to take the vessel out to sea. His negligent decision to set sail under these conditions caused the loss. The perilous warnings could not have been clearer.

## CLAIMS AGAINST MSC

The claims against MSC are similar to the claims against Bernuth (*See* ECF 83, Counterclaim against MSC; ECF 93, Complaint in Intervention). These claims against MSC, however, are even weaker. First, there is no contractual relationship between MSC and the Owners, or MSC and the Hull Underwriters (MSC Supp. Mem. 8). Second, there is no evidence that any of the MSC containers were overweight or misdeclared (MSC 56.1 Def. Stmt. ¶ 20; Exhibit I to Flood Aff. 228–31). The sinking of the ship was caused solely by Captain Fijol taking the ship out to sea while it was clearly in an unseaworthy condition. There could be no contribution to this negligence on MSC's part because there is no evidence that MSC contributed to the cause of its sinking by providing incorrect weight information. Owners and Hull Underwriters' claim for negligence and breach of contract against MSC fail.

## CONCLUSION

Bernuth's motion for summary judgment (ECF 174) and MSC's motion for summary judgment (ECF 168) dismissing the claims against them are GRANTED.

SO ORDERED.